**KINELOW PUBLISHING CO., Inc.,**
**Plaintiff,**

**v.**

**PHOTOGRAPHY IN BUSINESS, INC.**
**and United Business Publications,**
**Inc., Defendants.**

**No. 63 Civ. 1341.**

United States District Court
S. D. New York.
July 12, 1967.

---

Halpern & Rothman, by Jessel Rothman, New York City, for plaintiff.

Saul E. Rogers, by Sol Ringel, New York City, for defendants.

## OPINION

TYLER, District Judge.

This copyright infringement action was tried before the court without a jury on May 11 and 12, 1967. At the conclusion of the evidence on the second day, decision was reserved with the stipulation that if the court determines infringement by defendants, they will be entitled to reopen their case for additional proof in mitigation of damages. See 17 U.S.C. § 101.

The essential facts are not in serious dispute. Plaintiff ("Kinelow") is a publisher of a trade magazine known as *Graphic Science*. In the late summer and fall of 1961 representatives of Kinelow communicated with Western Electric Company ("Western Electric") concerning the right to publish an article of two Western Electric employees, E. C. Russell and J. H. House, dealing with new techniques for drawings on plastic film with plastic pencils. In September, 1961, Grady Morgan, an employee in Western Electric's public relations department, corresponded with Kinelow's president concerning the article. Prior to that correspondence, Morgan had been urged by Western Electric's chief of technical publications " * * * to have this article appear in nationally recognized publications as soon as possible. Otherwise, Western Electric Company may lose the recognition for this development".

On September 18, 1961, Morgan sent to Kinelow the manuscript and a letter of transmittal, to be discussed in more detail hereinafter, granting permission

to publish the article "on a by-line basis". In the April, 1962 issue of *Graphic Science*, the article was featured under the title of "New Illustration and Reproduction Techniques". On April 9, 1962, Kinelow secured from the Register of Copyrights a certificate of copyright registration for the entire April issue of *Graphic Science* entered as of that date and denominated Class B, No. 962329.

Defendants (hereinafter collectively referred to as "United") are in the business of publishing various trade magazines and publications. One of their publications is entitled Industrial Photography. In early 1963, United decided to issue, along with its regular April edition of Industrial Photography, a special supplement entitled "Industrial Reproductions". This supplement was published in April, 1963, and contained the article written by the two Western Electric employees. Like Kinelow, United requested and obtained the manuscript directly from the public relations department of Western Electric. Neither Kinelow nor United paid Western Electric or the authors for publication rights to the article.

The parties have stipulated that the article published by Kinelow in its April, 1962 issue of *Graphic Science* and the article published a year later by United in its supplement are substantially the same. As United readily concedes, its representatives were aware of publication of the article in *Graphic Science* prior to the time when they wrote to Western Electric for permission to include the article in the April, 1963 supplement. For its publication in the latter, United obtained from Grady Morgan of Western Electric a slightly revised and up-dated manuscript of the work by Russell and House.

For reasons to be discussed hereinafter, I conclude that Kinelow was not the proprietor of the Russell and House article; thus, its claimed copyright to that article was and is invalid, and its complaint against United must be dismissed.

It long has been recognized that a general or "blanket" copyright in a periodical does not protect rights in a specific article contained therein unless copyright privileges or a proprietary right have been previously assigned to the publisher. Mail & Express Co. v. Life Pub. Co., 192 Fed. 899 (2d Cir. 1912). Kinelow has failed to prove in this case that exclusive title to or copyright privileges in the article were conveyed to it, either by express agreement or by contract implied in the law.

As the evidence here plainly establishes, and indeed as Kinelow concedes, the article was written by two engineer-employees of Western Electric. Thus, in accordance with Section 26 of the Copyright Act, 17 U.S.C. § 26, Western Electric under the familiar "works for hire" doctrine became the "author" of the article prepared by its two employees in the regular course of business. Stated differently, absent a contractual reservation to the contrary, the presumption arises, and is unrebutted here, that copyright privileges in the Russell and House article inured to Western Electric, at whose expense and under whose sponsorship the article was composed. Nimmer, Copyright § 62, at 238 (1966); Electronic Publishing Co. v. Zalytron Tube Corp., 376 F.2d 592 (2d Cir. 1967).

At trial, Kinelow, although presumably recognizing this principle, produced no evidence of any specific written agreement in which Western Electric transferred to Kinelow copyright privileges in or exclusive title to the article. Rather, Kinelow has pressed two theories which can be fairly summarized as follows: (1) Western Electric, on the strength of certain statements, orally and in writing, by Grady Morgan, intended in September, 1961 to confer upon Kinelow exclusive rights to the article, and (2) as Western Electric and Kinelow fully understood at the time in question, there was and is a custom and usage in the technical trade publication field that when a publisher agrees to publish an article as a feature with both the authors and their firm given full credit therefor,

that publisher is thereby deemed to acquire exclusive and complete rights to the article. Unfortunately for Kinelow, the evidence, as I appraise it, fails to support either theory.

In my view, the credible evidence in this case establishes that Western Electric never intended to convey any exclusive rights in the article to Kinelow. As early as August, 1961, Western Electric adopted a policy or plan to place the Russell and House article in as many reputable technical publications as possible. *Graphic Science* was one of several such magazines to which Western Electric intended to submit the article. After successfully placing the article in *Graphic Science,* Western Electric in February, 1962 responded quickly and favorably when United requested permission to use the article in its April, 1963 supplement.

Such a policy and the resultant efforts, as shown by the evidence, of Western Electric employees to implement it, negate any intention by that company to convey exclusive rights in the article to Kinelow. Other evidence points to the same conclusion. Henry E. Marrows, Technical Information Manager for Western Electric for the past ten years, testified at trial that his office had never given exclusive rights or copyright privileges to any article during his tenure. Marrows affirmed the aforementioned policy of Western Electric to achieve the widest dissemination possible of technical information articles. Even Grady Morgan, whose testimony was inconsistent in certain aspects, testified that he never mentioned or discussed exclusive rights or a copyright with the Kinelow representatives when he dealt with them in the fall of 1961. Finally, perhaps the single most important letter which passed between Kinelow and Western Electric concerning the article is the one which was written under date of September 18, 1961 by Morgan to Kinelow's president. For present purposes, and for other purposes to be discussed later, it is worth setting forth the substance of this relatively brief letter as follows:

"The attached manuscript, 'New Techniques Save Thousands in Time and Dollars at Western Electric Company', by E. C. Russell and J. H. House has been approved for publication as amended by the Western Electric Company.

This material is being submitted to you for your use on a by-line basis. If you are interested in using it, I would appreciate hearing from you as soon as possible."

Nothing in this letter, of course, conferred any exclusive rights upon Kinelow, nor was anything mentioned on the subject of copyright. Interestingly, the only follow-up correspondence from Western Electric to Kinelow was Morgan's transmittal of the *curricula vitae* of House and Russell so that they could receive appropriate by-line recognition in the April, 1962 issue of *Graphic Science.*

Aware of the inherent difficulties in establishing a transfer to it by Western Electric of exclusive rights to the article either by means of a contract in writing or by oral understandings, Kinelow has vigorously pressed its second, and perhaps major, theory in the trial of this action. As already indicated, this theory is to the effect that in the technical trade publication field there is and has been a custom that no publisher will ever publish an article in a trade periodical on a by-line basis except upon the implicit understanding that exclusive title to the article passes to it.

A considerable portion of the trial was devoted to testimony on this issue. Kinelow's president, Clayton P. Yake, and an expert witness produced by Kinelow, Dr. Julius Elfenbein, testified to the existence of such a trade usage. In my view, aside and apart from their bias, the testimony of both of these witnesses is inherently incredible, if for no other reason than that such a policy would tend to be self-defeating for any aggressive publisher. For obvious reasons, companies like Western Electric have an interest in wide dissemination of "technical break-

through" articles. A custom or usage of the kind urged by Kinelow would have a tendency to thwart and discourage any such dissemination. If technical trade publishers adhered to a custom as urged by Kinelow, they would thus encounter difficulty in obtaining the kind of fresh and imaginative articles which they obviously desire and need for competitive purposes in their field.

In any event, defendants' witnesses denied knowledge of the existence of any such usage. Specifically, Mr. Pliny Porter, a consultant to publishers of unquestioned stature and experience, testified that he had never heard of any such custom in the publishing field generally or in the trade publication field specifically. The aforementioned Henry E. Marrows of Western Electric testified to the same effect. I find their testimony credible, reasonable and persuasive.

In fairness to Kinelow, however, mention should be made of certain curious and conflicting testimony given by Grady Morgan. Plaintiff relies heavily on this testimony for obvious reasons. Specifically, for example, Morgan testified at one point during the trial that in February, 1963 when Western Electric received inquiries from United concerning the article, he told one of his business associates at Western Electric that the article had been copyrighted by Graphic Science. Morgan also stated that during the relevant period he had the understanding or opinion that a publisher which first published any article such as the Russell and House article obtained exclusive rights to that article by virtue of the first publication. In my view Kinelow's reliance on this and other evidence given by Morgan is misplaced. Morgan's testimony at trial, both on direct and cross-examination, particularly in the light of his deposition testimony taken several years earlier, suggests to me that his memory on the crucial events in this case was faulty. More important, neither this court nor the litigants are bound, at least under the facts of this case, by Morgan's mistaken opinions concerning copyright law.

In sum, I find from the evidence that Western Electric conferred upon Kinelow nothing more than a license to publish the Russell and House article in one of its issues of *Graphic Science*. Western Electric intended to convey to Kinelow nothing more. As a mere licensee, then, Kinelow neither had nor has a valid copyright, either specifically or by means of a blanket copyright, to the Russell and House article. Accordingly, its claims against United must fail. See Egner v. E. C. Schirmer Music Co., 139 F.2d 398 (1st Cir. 1943); Morse v. Fields, 127 F.Supp. 63, at 64–65 (S.D. N.Y.1954).

Judgment should be entered in favor of the defendants dismissing the complaint. In the exercise of discretion, award of counsel fees to defendant is denied. 17 U.S.C. § 116. Despite my determination that plaintiff's claims are lacking in merit, I cannot say that plaintiff has been unreasonable or capricious in its commencement and conduct of this litigation. Morse v. Fields, *supra* at 69.