DOUGLAS INTERNATIONAL CORPO-
RATION, Sally Marr, Individually and
as Administratrix of the Estate of Len-
ny Bruce, et al., Plaintiffs,

v.

Fred BAKER et al., Defendants.

No. 71 Civ. 1842.

United States District Court,
S. D. New York.

May 11, 1971.

Schwartz, Mermelstein, Burns, Lesser & Jacoby, New York City, for plaintiffs.

Farber & Siff, New York City, for defendants.

MOTLEY, District Judge.

*Findings of Fact and Conclusions of Law*

This is an action for copyright infringement arising under 17 U.S.C. § 1 et seq. Plaintiffs seek a preliminary injunction restraining the defendants from performing a play which allegedly infringes their copyright. On April 29, 1971, after two hearings on the matter, this court issued a temporary restraining order, pending the determination of the motion for a preliminary injunction.

The copyright applies to a book entitled "The Essential Lenny Bruce" (hereinafter called the "Book"). The Book is a compilation of the routines, monologues and commentaries of Lenny Bruce. The copyright for the Book was originally secured by Ballantine Books, Inc., but has since been assigned to and is presently owned by plaintiff Douglas International Corporation (hereinafter called "International"). Plaintiff Marvin Worth Productions (hereinafter called "Productions") is the licensee of all dramatic rights in the material created by Lenny Bruce, including the Book. Productions has authorized plaintiff L. B. Company to produce a dramatic version of the Book. L. B. Company's play,

entitled "Lenny", is scheduled to have a formal opening May 26, 1971. Plaintiff Sally Marr, Bruce's mother and the administratrix of his estate, is the owner of copyrights in the material created by Bruce which has not been incorporated into the Book.

Defendants' play, also entitled "Lenny", was written by defendant Fred Baker and was scheduled to have its formal opening at the Village Gate on May 7, 1971. The previews, enjoined by this court, commenced on April 27, 1971. Defendant Art D'Lugoff is co-producer with Baker of the allegedly infringing play, the Village Rathskeller, Inc. operates the Village Gate, and defendant Cabaret Theatre Experiment is a group formed to present the play.

Plaintiffs' original papers alleged that the defendants' play contained at least 33 of the copyrighted routines set forth in "The Essential Lenny Bruce." This figure was based upon a comparison by plaintiffs of a script written in 1968 by defendant Baker with the Book. Plaintiffs were not sure, at the time of the filing of this action, that the 1968 play by Baker was the same as the play opening at the Village Gate. Prior to this action they made a demand upon the defendants for a copy of the script of the play which was about to open. Defendants refused to comply with this request. At the first hearing on this motion this court required the defendants to supply plaintiffs with a copy of the new script. Plaintiffs also attended a preview of the play at the Village Gate.

In their affidavit, submitted after viewing the preview and reading the script of the play presented, plaintiffs repeated their allegation that the play being performed by defendants infringed their copyright in the Book. According to this new affidavit, defendants' play contained 32 routines which are copyrighted in the Book. After comparison the court agrees.

Section 1(b) of the Copyright Law grants to the copyright proprietor of a literary work, the exclusive rights to make " . . . other versions thereof

. . . ." and to " . . . dramatize it if it be a non-dramatic work. . . . " Any violation of those rights constitutes an infringement of the copyright. Geisel v. Poynter Products, Inc., 295 F.Supp. 331 (S.D.N.Y.1968). In the instant case, plaintiff International's assignor, Ballantine Books, Inc., secured statutory copyright protection for "The Essential Lenny Bruce." Section 209 of the Copyright Act states that a certificate of copyright is " . . . *prima facie* evidence of the facts stated therein." Thus, International holds and owns a *prima facie* valid copyright in the Book, and by virtue thereof controls the dramatic adaptation rights thereto.

The defendants do not dispute plaintiffs' copyright, nor do they dispute that they have employed a number of Bruce's routines in the play. Rather, they set forth by way of affidavits, what the court construes to be the following six defenses to the infringement: 1) that Fred Baker is the author and proprietor of the play defendants are producing and as such is entitled to produce it; 2) that Baker's play is an original work and as such is entitled to be produced by defendants; 3) that a substantial portion of the material in the Book is derived from public sources and as such is not copyrightable or, that it is factual material not copyrightable; 4) that a number of the passages were drawn from conversations between Bruce and others, including Fred Baker, and that such material was either not copyrightable or, if there was a common law copyright it was waived by Bruce; 5) that plaintiffs have unclean hands and that, therefore, a court of equity should not grant them relief; and 6) that plaintiffs refusal to turn over to defendants a copy of their script somehow precludes them from showing the irreparable harm allegedly necessary for the issuance of a preliminary injunction.

To these defenses plaintiffs reply as follows: 1) that Baker was hired as a mere employee and as such has no rights in the play or, even if he has rights, these rights do not extend to the use of plaintiff's copyrighted material; 2) that even if Baker's play shows some originality this does not give the defendants the right to incorporate passages from the Book into the play; 3) that the material is not derived from public sources and is copyrightable; 4) that the bare allegation that the material was drawn from conversations with Bruce is insufficient, and even if true, the material was protected by a common law copyright; 5) that the plaintiffs do not have unclean hands; and 6) that a detailed showing of irreparable harm is not necessary for the issuance of an injunction in a copyright case.

The court agrees with the plaintiffs that the defendants' play employs materials from "The Essential Lenny Bruce" in such substantial quantity as to constitute a prima facie case of copyright infringement. Marvin Worth Productions v. Superior Films Corp., 319 F. Supp. 1269 (S.D.N.Y.1970). In such a case, the holder of the copyright is entitled to a preliminary injunction without a detailed showing of irreparable harm. American Metropolitan Enterprises of N. Y. Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2 Cir., 1968); Marvin Worth Productions v. Superior Films Corp., *supra*. The court finds that the defendants have failed to establish any of the six defenses listed above and, therefore, issues a preliminary injunction to protect plaintiffs' rights.

### First Defense

Defendants' first defense is that Fred Baker is the author-proprietor of the defendants' play and as such has a right to produce it. This claim is grounded on the fact that in 1968 International requested Mr. Baker to write the play, but that he was allegedly never paid for the writing of the play.

Plaintiffs, on the other hand, contend that Baker was hired as a mere employee to write the play, and that under the "works for hire" doctrine International became the author of the play. Kinelow Publishing Co. v. Photography In Business, Inc., 270 F.Supp. 851

(S.D.N.Y.1967). It was in this connection, i. e., as an employee that Baker used the materials copyrighted in the Book. Plaintiffs support their claim that Baker was an employee by: 1) International's payment to Baker of $1,200 to spend three weeks in Jamaica in 1968 writing the play; 2) the sworn affidavit of Mr. Baker which states:

"I was hired as a writer-director for this property;" and

3) a letter written approximately five months ago by Baker to Productions requesting permission to produce the play.

The court finds it unnecessary to decide whether or not the "works for hire" doctrine applies in this case. Even assuming he is author-proprietor of the play this would not, without more, give him the right to use plaintiffs copyrighted materials in the 1968 play. The issue in this case is not who has the right to perform defendants' play (plaintiffs do not wish to perform defendants' play); it is whether or not defendants' play infringes upon plaintiffs' copyrighted Book. No written agreement, contract or license has been shown to the court which in any way transferred to the defendants the right to employ any of plaintiffs' copyrighted materials. Without such an agreement, or without excluding the pirated materials, defendants cannot perform the play. Kinelow Publishing Co. v. Photography In Business, Inc., *supra*.

### Second Defense

Defendants' second defense, that Baker's play is an original work and, therefore, entitled to its own copyright protection misconstrues the nature of this lawsuit. The defendants are not suing plaintiffs for copyright infringement; it is the plaintiffs who claim the defendants are using copyrighted materials without authorization. The fact that certain parts of Baker's play may be novel and original does not allow the defendants to incorporate therein copyrighted materials belonging to plaintiffs.

### Third Defense

Defendants' third claim is that much of the material used in Baker's play is taken from the transcripts of legal proceedings. Even assuming this were true, the publication of previously copyrighted materials in court transcripts cannot possibly dedicate such material to the public. In this regard the court finds persuasive Judge Lasker's reasoning in a similar case, Marvin Worth Productions v. Superior Films Corp., *supra*. Therein, the court stated:

"[t]o hold that such originally copyrighted material ["The Essential Lenny Bruce"] becomes somehow dedicated by use in the courts would permit the unraveling of the fabric of copyright protection." *Id.* 319 F.Supp. at 1271.

Additionally, the court, at this time, finds that the defendants have not submitted adequate affidavits alleging that any of Bruce's particular routines are stock or factual situations and, therefore, not copyrightable. The broad allegation that Bruce took material from other comedians is insufficient.

### Fourth Defense

Defendants generalized allegation that some of the allegedly infringing material was taken from conversations and tape recordings among Bruce, Baker and others is insufficient. Nowhere do the defendants state which routines were taken from these conversations and tapes. The court agrees with Judge Lasker in Marvin Worth Products v. Superior Films Corp., *supra* 319 F.Supp. at 1272 that:

"[s]uch self-serving and conclusory statements are markedly insufficient to sustain the claim that the material here utilized, identical or nearly identical with the copyrighted material, was in fact derived from Bruce's conversations."

### Fifth Defense

Defendants' fifth defense is that they should not be enjoined from the

production of the play because Alan Douglas of International is guilty of "unclean hands". By affidavit defendants assert that at the time (1968) Douglas engaged Baker to write a play about Lenny Bruce he had already granted dramatic rights in the material to Marvin Worth Productions (Productions was to make a film based on the Bruce material.) While this allegation may be true, it does not, standing alone, make Douglas guilty of "unclean hands". Baker's play was produced in 1968 and played for two days before it was closed, according to Douglas' affidavit, for lack of bookings. While Baker disputes this reason for the play's closing, and asserts bad faith on Douglas' part, he can support this assertion only with vague generalities.

Another factor is that Baker never had any written contract with Douglas regarding the play. If Baker was a mere employee, as Douglas asserts, International had no obligation to Baker as to whether or not the play would ever be used.

Additionally, even assuming that Douglas or International are guilty of "unclean hands" this does not mean that Productions or the L. B. Company are also guilty. International has been made a party to this action, according to plaintiffs' affidavit, solely because the copyright law requires it. The real party in interest, the L. B. Company, is not guilty of any wrongdoing. They certainly are entitled to the injunction.

### Sixth Defense

Defendants claim that plaintiffs have failed to show the irreparable harm allegedly necessary for the granting of a preliminary injunction. They claim that because plaintiffs would not show them a copy of their play it is not known in what way defendants' play will injure plaintiffs' play. However, the claim in this case is that defendants' play infringes plaintiffs' copyrighted Book and not that it infringes plaintiffs' play. Additionally, the copyright owner of a book has the *right* to produce the book in dramatic form and can sue to enjoin an infringing work even if he is not at that time producing a play.

Finally, it is not necessary that plaintiffs in a copyright infringement action, particularly one involving dramatic works, make a detailed showing of irreparable harm. American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., *supra*; Marvin Worth Productions v. Superior Films Corp., *supra*.

Therefore, in light of the above, the plaintiffs' motion for a preliminary injunction is granted. Defendants are restrained from producing their play "Lenny" so long as it contains any of the material infringing plaintiffs' copyrighted work "The Essential Lenny Bruce".

This opinion constitutes the court's findings of fact and conclusions of law. Rule 52, Fed.R.Civ.P.

Submit order.