[Civ. No. 40149. First Dist., Div. Two. Dec. 15, 1977.]

REX ZACHARY, Plaintiff and Appellant, v.
WESTERN PUBLISHING COMPANY, INC.,
Defendant and Respondent.

COUNSEL

Henry G. Kohlmann for Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley & Wagner, John M. Bentley, Michael J. Brady, John M. Rommel and Beveridge, DeGrandi, Kline & Lunsford, for Defendant and Respondent.

OPINION

**TAYLOR, P. J.**—This is an appeal by Rex Zachary (Zachary),[1] the inventor, from an order granting Western Publishing Company's motion for a summary judgment and dismissing Zachary's action for general and punitive damages and injunctive relief for infringement of his common law copyright in the design and drawings for a kite. Zachary's kite, in the nick of time,[2] has brought before this court a question of law never before faced by a California court of record: whether the federal government's grant to Zachary of a utility[3] patent constituted a "publication" that deprived Zachary of his common law copyright in the descriptions and diagrams in his patent application. For the reasons set forth below, we have concluded that the order must be reversed.

The facts are not in dispute.[4] On November 7, 1961, Zachary received patent No. 3,007,659 for a novel kite.[5] Zachary's patent will

[1]As there is a conflict between the briefs and the record as to the correct spelling, we have followed the spelling in the clerk's transcript.

[2]The new federal Copyright Revision Act of 1976 (90 Stat. 2541, § 101 et seq.) which becomes effective on January 1, 1978, repeals the prior title and expressly preempts state law governing common law copyrights and instead creates a federal common law copyright (new title 17, effective Jan. 1, 1978, 17 U.S.C.A. 1977 Appen., §§ 301-302).

[3]A utility or machine patent is issued pursuant to 35 United States Code Annotated section 101, which provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

[4]For purposes of the summary judgment, the parties have stipulated that the only issue was whether Zachary's patent constituted a "publication," which extinguished Zachary's common law copyright. All other issues were reserved.

[5]The patent described the kite as one formed from a single sheet of flexible material without the addition of anything else, and capable of superior lift characteristics that rendered it "capable of extremely long play outs in even minimum wind conditions."

expire on November 7, 1978. To obtain the patent, Zachary was required to submit drawings and descriptions of his kite to the United States Patent Office (35 U.S.C.A. §§ 111, 112, 113). On grant of the patent, Zachary's drawings and descriptions were reprinted in the Official Gazette and distributed to some 6,000 subscribers to that journal, as provided by 35 United States Code Annotated, section 11(a). In addition, the patent office, pursuant to 37 Code of Federal Regulations, section 1.11, made Zachary's patent available to the general public for sale and permitted copies to be made in the general search room and distributed to public libraries throughout the United States.

Prior to the expiration of the patent, without Zachary's consent or permission, Western allegedly copied Zachary's drawings and descriptions and reprinted them in one of its commercial publications. Western's book indicated that the kite had been invented and patented by Zachary, and suggested that the reader try to build a kite from Zachary's design and drawings.

Thereafter, Zachary filed the instant action against Western[6] for infringement of his common law copyright, seeking general damages for reasonable royalties, as well as punitive damages and injunctive relief. After Western moved for summary judgment, the parties stipulated that the only issue was whether the securing of a patent by Zachary was a "publication" which divested him of his common law copyright for the drawings and description. Zachary then filed a motion for partial summary judgment on the issue of liability.

Both motions were heard on June 10, 1976. In granting Western's motion and denying Zachary's, the trial court ruled that "a United States patent is *a general publication* without restriction as to persons and purpose; and, save for the rights of the owner thereof under the patent laws of the United States, *everything disclosed in the patent is a part of the public domain*" (italics added). The court then concluded that, therefore, Western may use and reproduce Zachary's kite plans without responsibility or liability to Zachary pursuant to Civil Code section 983.

■ Preliminarily, we turn to Western's contention that since the federal government has preempted the field of patents and copyrights, the California courts do not have jurisdiction of the subject matter. We

---

[6]Two other publishers were named in the original complaint but did not join in the motion for summary judgment, and are not parties to this appeal.

note that Zachary's action was for infringement of his common law copyright, pursuant to state law, not a federal statutory copyright.[7]

The applicable federal statute, 28 United States Code Annotated, section 1338, provides, in pertinent part: "(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. *Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.*

"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws." (Italics added.) ·

Section 1338 does not preclude an action based upon a common law copyright[8] granted by state law; the statute must be read in conjunction with 17 United States Code Annotated, section 2, set forth below,[9] which expressly negates any Congressional intent to preempt the power of the states to provide for and regulate common law copyrights. As indicated above, at footnote 2, in contrast, the new federal copyright law expressly preempts state law governing common law copyrights.

The characterization of the action as a patent or nonpatent suit within the meaning of section 1338 turns on the form in which the plaintiff has chosen to cast his complaint (*Koratron Company* v. *Deering Milliken, Inc.* (9th Cir. 1969) 418 F.2d 1314, 1316-1317 [10 A.L.R.Fed. 636]).

---

[7]A statutory copyright exists only for the statutory term and only in a work that has been "published" within the meaning of the statute. A common law copyright is perpetual and exists only in a work that has not been "published" within the meaning of the statute. The two rights do not coexist in the same work; the common law right ends when the statutory right begins (*Stanley* v. *Columbia Broadcasting System,* 35 Cal.2d 653, 660-661 [221 P.2d 73, 23 A.L.R.2d 216]; see also Katz, *Copyright Protection in Architectural Plans, Drawings & Designs,* 19 Law & Contem. Prob. 224, 227-228; Drone, A Treatise on the Law of Property in Intellectual Productions in Great Britain and the United States (1879) p. 100).

[8]The United States Supreme Court has recognized an overlap between the federal patent statute (35 U.S.C.A. § 171 et seq.) and the federal copyright statute (17 U.S.C.A. § 5 et seq.) (*Application of Yardley* (C.C.P.A. 1974) 493 F.2d 1389, 1393-1394; *Mazer* v. *Stein,* 347 U.S. 201, 217 [98 L.Ed. 630, 642, 74 S.Ct. 460]).

[9]*Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor.*" (Italics added.)

Here, Zachary's action is based upon California law governing common law copyrights, as codified in Civil Code section 980[10] et seq. The complaint did not allege that Zachary possessed a claim under the federal statutory copyright act (17 U.S.C.A. § 1 et seq.), nor did it set forth any facts to support such a claim; Western also does not assert that Zachary has complied with the federal statutory prerequisites to maintain an action for copyright infringement pursuant to 17 United States Code Annotated, sections 12 and 13 (*Hearst Corporation* v. *Shopping Center Network, Inc.*, 307 F.Supp. 551, 556 [165 U.S.Pat.Q. 51]).

We think that the jurisdictional question Western raises was settled by our Supreme Court in *Farmland Irrigation Co.* v. *Dopplmaier*, 48 Cal.2d 208 [308 P.2d 732]; Justice Traynor said at pages 216-217: "Every action that involves, no matter how incidentally, a United States patent is not for that reason governed exclusively by federal law. The police power of the states, for example, has long been held to include reasonable regulation of the manufacture and sale of patented articles dangerous to public safety [citation], and regulation of the transfer of patent rights to prevent fraud. [Citation.] A patent is not granted without reference to the general powers the states possess over their domestic affairs.

"It has been established by a long line of cases, moreover, that an action to set aside, specifically enforce, or recover royalties on a patent license contract is not an action arising under the patent laws of the United States for the purpose of determining the exclusive jurisdiction of the federal courts. [Citations.] State courts have jurisdiction over such actions, and in the absence of diversity of citizenship it is exclusive[11] of the federal courts. [Citations.]" At oral argument, Western maintained that *Kewanee Oil Company* v. *Bicron Corporation*, 416 U.S. 470 [40 L.Ed.2d 315, 94 S.Ct. 1879], precluded our jurisdiction. We do not agree.[12]

---

[10]In *Smith* v. *Paul*, 174 Cal.App.2d 744 [345 P.2d 546], this court (Division One) noted, at page 746, that Civil Code section 980 accepts the traditional common law theory of protectible property rights.

[11]Other jurisdictions also follow the rule that if the action does not arise under the federal patent or copyright statute, but is founded on state common law copyright, jurisdiction lies exclusively with the state courts (*Wells* v. *Universal Pictures Co., Inc.*, 166 F.2d 690 [77 U.S.Pat.Q. 1], accord, *Hearst Corp.* v. *Shopping Center Network, Inc., supra* 307 F.Supp. 551; *Mercury Record Pro., Inc.* v. *Economic Consultants, Inc.*, 360 F.Supp. 129 [179 U.S.Pat.Q. 679]).

[12]*Kewanee* held that state trade secret protection is not preempted by federal patent law. The Supreme Court analyzed the policies underlying both the patent laws and trade

Western challenges not only the subject matter jurisdiction of this court, but also argues that we cannot consider the issue of state common law copyright infringement, as this necessarily involves a consideration of the purpose, effect, coverage and "publication" of Zachary's patent and thereby infringes on the exclusive jurisdiction of the federal courts. The absurdity of this argument, which flies in the face of *Farmland Irrigation*, 48 Cal.2d 208, and *Koratron, supra*, 418 F.2d 1314, as well as *Smith* v. *Paul, supra*, 174 Cal.App.2d 744, does not require extensive discussion here, as it begs the very issue presented, namely, whether Zachary's patent grant constituted a common law "publication." The trial court concluded that Zachary's patent was a "general publication" by which Zachary forfeited all of his common law copyrights pursuant to state law. This conclusion is contrary to section 2 of the Federal Copyright Act quoted above at footnote 9. It also flies in the face of 17 United States Code Annotated, section 8, which provides, so far as pertinent: "The publication or republication by the Government, either separately or in a public document, of any material in which copyright is subsisting shall not be taken to cause any abridgement or annulment of the copyright or to authorize any use or appropriation of such copyright material without the consent of the copyright proprietor." Thus, the language of section 8, although not covering the point precisely, suggests a statutory policy contrary to Western's theory on this appeal.

Also analogous are cases such as *American Tobacco Co.* v. *Werckmeister*, 207 U.S. 284 [52 L.Ed. 208, 28 S.Ct. 72], which hold that the public exhibition of a work of art is not a publication that will protect against other types of infringements. As indicated in *American Tobacco, supra*, page 293 [52 L.Ed., page 215], the purpose of the federal copyright law is not so much the protection and control of the visible thing, but to secure

secret rights, and noted at page 481 [40 L.Ed.2d at p. 325]: "When a patent is granted and the information contained in it is circulated to the general public and those especially skilled in the trade, such additions to the general store of knowledge are of such importance to the public weal that the Federal Government is willing to pay the high price of 17 years of exclusive use for its disclosure, which disclosure, it is assumed, will stimulate ideas and the eventual development of further significant advances in the art. The Court has also articulated another policy of the patent law: that which is in the public domain cannot be removed therefrom by action of the States."

Western quoted the above to support its jurisdictional contention but failed to read language on the same page indicating that an invention is not in the public domain until expiration of the patent. In the instant case, Zachary's patent had not expired at the time Western copied his kite. Further, by granting common law copyright protection to the information in Zachary's patent application, no conflict arises with federal patent law policy of inspection and copying of patents by the public. Inspection and copying are still allowed, only misappropriation of the information for profit and to the detriment of the inventor is prohibited—precisely the same policy advanced by the patent laws.

to the inventor a monopoly for a limited time of the right to publish the production that is the result of the inventor's thought.

We conclude, therefore, that since Zachary's action arises under California law governing common law copyrights and not under federal patent·or copyright law, we have jurisdiction.

In this state, the basic principles governing "common law" copyright have been codified in Civil Code section 980 et seq. Section 980 provides: "(a) The author or proprietor of any *composition in letters* or art has an *exclusive ownership* in the representation or expression thereof as *against all persons* except one who originally and independently creates the same or a similar composition.

"(b) The *inventor or proprietor* of any *invention* or design, with or without delineation, or other graphical representation, has an *exclusive ownership* therein, and in the representation or expression thereof, which continues so long as the invention or design and the representations or expressions thereof made by him remain in his possession." (Italics added.) (Enacted 1872. As amended Stats. 1947, ch. 1107, § 1, p. 2546; Stats. 1949, ch. 921, § 1, p. 1686.)

The "exclusive ownership" right created by section 983 entitles the inventor to injunctive relief (*Johnston* v. *20th Century-Fox Film Corp.*, 82 Cal.App.2d 796 [187 P.2d 474]), as well as compensatory and punitive damages (*Read* v. *Turner*, 239 Cal.App.2d 504 [48 Cal.Rptr. 919, 40 A.L.R.3d 237]) against anyone who misappropriates the protected material.

However, the common law copyright created by section 980 may be extinguished upon "publication." Civil Code section 983 provides that "(a) *If the owner of a composition in letters* or art *publishes it the same may be used in any manner by any person, without responsibility to the owner, insofar as the law of this State* is concerned.

"(b) If the owner of any invention or design *intentionally makes it public, a copy or reproduction may be made public by any person, without responsibility to the owner,* so far as the law of this State is concerned." (Italics added.) (Enacted 1872. As amended Stats. 1947, ch. 1107, § 4, p. 2546; Stats. 1949, ch. 921, § 4, p. 1686.)"[13]

---

[13]The extinguishment· aspect of Civil Code section 983 is a departure from the common law and grafts a statutory copyright concept onto the common law copyrights

While the Civil Code does not define either "publish" (used in subd. (a) of § 983), or "intentionally makes . . . public" (as used in subd. (b) of § 983), the Legislature intended in both sections to use the common law meaning of the term "publication" (*Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d 653, pp. 660-661). In *Stanley,* our Supreme Court explained this definition and its application, as follows at pages 661 and 662: ". . . 'Speaking generally, common-law rights are limited to unpublished works, and all common-law property rights therein are lost on a publication. . . while statutory copyrights relate mainly to published works, . . . Again, *common law rights in unpublished works are of a wider and more exclusive nature* than the rights conferred by statutory copyright in published works. *The common law prohibits any kind of unauthorized interference with, or use of, an unpublished work on the ground of an exclusive property right,* and the common-law right is perpetual, existing until lost or terminated by the voluntary act of the owner, . . . while a statutory copyright permits a "fair use" of the copyright publication, without deeming it an infringement. . . .' . . . (18 C.J.S., Copyright and Literary Property, § 2, p. 138 et seq.; and cases there cited.) [Italics partially added.]

"The test, with respect to infringement, which is laid down by the cases is that impression received by the average reasonable man upon a comparative reading of the two works 'not by a dissection of sentences and incidents, suitable for the study of a digest or textbook, but inherently unnatural for any man who has the kind of brains that make him able to adapt a work of fiction.' (*Frankel* v. *Irwin,* 34 F.2d 142, 144.) (*White-Smith Music Co.* v. *Apollo Co.,* 209 U.S. 1, 17 [28 S.Ct. 319, 52 L.Ed. 655]; 13 C.J. 1113, § 276, n. 30; *Harold Lloyd Corp.* v. *Witwer,* 65 F.2d 1, 18; *Hewitt* v. *Coward,* 41 N.Y.S.2d 498; *Dymow* v. *Bolton,* 11 F.2d 690; *Twentieth Century-Fox Film Corp.* v. *Dieckhaus,* 153 F.2d 893; 15 Cornell L.Q. 633, 639.)

"In determining whether the similarity which exists between a copyrighted literary, dramatic or musical work and an alleged infringing publication is due to copying, the common knowledge of the average reader, observer, spectator or listener is the standard of judgment which must be used. (*Echevarria* v. *Warner Bros. Pictures,* 12 F.Supp. 632; *Sieff* v. *Continental Auto Supply,* 39 F.Supp. 683; *Barbadillo* v. *Goldwyn,* 42 F.2d 881, 885.)"

recognized by Civil Code section 980. At common law, no ownership rights in property were lost by publication in print or public performance (*Donaldson* v. *Becket,* 4 Burr. 2408, 98 Eng. Rep. 257, 2 Bro. 129, 1 Eng. Rep. 837; House of Lords 1774).

We also note that since the common law definition of "publication" is different from the lay connotation of the term, considerable confusion has resulted (see Katz, *The Publication of Intellectual Productions—A Common Sense Approach* (1956) 30 So.Cal.L.Rev. 48). The lay definition is one of communication, while for copyright purposes, the legal definition[14] encompasses a donation, abandonment or forfeiture of the legal rights of the creator, owner or possessor. Although the cases are not always consistent, it is clear that in the common law sense "publication" has two dimensions: (1) "general" vs. "limited" publication, and (2) "investive" vs. "divestive" publication.

As to the first, not every printing, display or performance of a work results in the loss of a common law copyright. Only a "general" publication extinguishes the exclusive ownership right; a "limited" publication does not (*Smith* v. *Paul, supra,* 174 Cal.App.2d 744; *Read* v. *Turner, supra,* 239 Cal.App.2d 504; *Carpenter Foundation* v. *Oakes,* 26 Cal.App.3d 784 [103 Cal.Rptr. 368]). The United States Supreme Court has defined a "general publication" as ". . . 'such a dissemination of the work of art itself among the public, as to justify the belief that it took place with the intention of rendering such work common property' " (*American Tobacco Co.* v. *Werckmeister, supra,* 207 U.S. at pp. 299-300 [52 L.Ed. 208, 217-218]; accord: *Smith* v. *Paul, supra*; *Read* v. *Turner, supra*; *Carpenter Foundation* v. *Oakes, supra; Shanahan* v. *Macco Constr. Co.,* 224 Cal.App.2d 327 [36 Cal.Rptr. 584]; *White* v. *Kimmell* (S.D.Cal.) 94 F.Supp. 502 [87 U.S.Pat.Q. 407], reversed on other grounds 193 F.2d 744 [92 U.S.Pat.Q. 400], cert. den., 343 U.S. 957 [96 L.Ed. 1357, 72 S.Ct. 1052]). Conversely, a "limited" publication is "one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public" (*Werckmeister* v. *American Lithographic Co.,* 134 F. 321, 324; accord: *Smith* v. *Paul, supra*; *Read* v. *Turner, supra*; *Carpenter Foundation* v. *Oakes, supra*).

In ascertaining whether a publication is general or limited, the U.S. Supreme Court's *Werckmeister* test looks to the totality of the circumstances and considers factors such as the *objective* intention of the owner as manifested by his conduct (i.e., whether the owner intends that the subject of the copyright may be used by the general public), the character of the communication or exhibition effecting the publication, the nature of the right protected, and the nature of the subject of the

---

[14]We are aware of the one-word one-meaning fallacy, and recognize that for purposes of tort law, the term "publication" has an entirely different legal meaning.

copyright as related to the method of communication (*Read* v. *Turner, supra,* 239 Cal.App.2d at p. 511).[15]

Our analysis of the authorities that apply principles of limited and general publication shows that the *nature* of the communication, rather than the *extent* of dissemination, primarily determines whether a general or limited publication occurs. Thus, for example, a professor's delivery of a particular lecture to hundreds of students does not result in a general publication because the material is intended for the students' instructional use (see *Williams* v. *Weisser,* 273 Cal.App.2d 726 [78 Cal.Rptr. 542, 38 A.L.R.3d 761]). Similarly, the public performance of a play does not constitute a "general publication" that extinguishes a common law property right (*Ferris* v. *Frohman,* 223 U.S. 424 [56 L.Ed. 492, 32 S.Ct. 263]), nor does the exhibition of a painting to the general public (if an admission fee is required and patrons are prohibited from copying the painting) (*Werckmeister* v. *American Lithographic Co., supra,* 207 U.S. 284), or an audition performance of a radio program before an audience in a broadcasting studio (*Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d 653). On the other hand, the sale of a *single* copy of a work may constitute a general publication (*Gottsberger* v. *Aldine Book Pub. Co.* (C.C.D.Mass. 1887) 33 F. 381).

The second dimension of the legal definition of "publication" is the distinction between an "investive" and "divestive" publication, that was first suggested in *American Visuals Corporation* v. *Holland* (C.C.P.A. 1956) 239 F.2d 740, in order to reconcile a number of conflicting cases. Justice Frank noted that the cases used a more stringent standard of publication when the owner of a common law copyright may be divested of his interest, and used a less stringent standard where the owner seeks to be invested with federal statutory copyright protection, and concluded

---

[15]Western urges us to employ the alternative test of limited publication enunciated in *White* v. *Kimmell, supra,* 94 F.Supp. 502, and followed in *Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327. Under this alternative test, a publication is deemed limited *only* if it "communicates the contents of a manuscript to a definite group *and* for a limited purpose, and without the right of diffusion, reproduction, distribution or sale . . . ." (*White* v. *Kimmell, supra,* p. 505; italics added). Whatever merits such a mechanical test may have in other situations, we believe the *Werckmeister* standard to be more appropriate to a novel case, such as this, where the totality of circumstances, rather than merely two factors, should be taken into account in determining whether a patent grant extinguishes common law property rights. The *Werckmeister* test was applied by this court (Division One) in *Smith* v. *Paul, supra,* 174 Cal.App.2d 744, discussed more fully below, and also has been utilized in the two most recent California cases involving termination of common law copyrights (see *Read* v. *Turner, supra*; *Carpenter Foundation* v. *Oakes, supra,* 26 Cal.App.3d 784).

that the courts so treated the concept of "publication" as to prevent piracy.

The investive/divestive aspect of the definition of publication was approved and extended in *Hirshon* v. *United Artists Corporation* (C.C.P.A. 1957) 243 F.2d 640 [113 U.S.Pat.Q. 110]. Justice Bazelon noted, at page 645, that *"it takes more in the way of publication to invalidate any copyright, whether statutory or common law, than to validate it."* (Italics partially added.)

We recognize that while the investive vs. divestive publication doctrine has been criticized as vague (see 1 Nimmer on Copyright, § 58.2, pp. 226-228), it has been employed by the federal courts and presents a useful guideline for the instant case.[16]

In the light of the legal definition that encompasses "general" vs. "limited," as well as "investive" vs. "divestive" publication, we turn to the specific issue here presented, namely, whether the grant of the design patent to Zachary was the type of publication of the drawings and description contained in his patent application that deprived him of his common law copyright in the design and drawings pursuant to Civil Code, section 980 et seq.

Western relies primarily upon *Korzybski* v. *Underwood & Underwood, Inc.* (2d Cir. 1929) 36 F.2d 727 [3 U.S.Pat.Q. 242]. In *Korzybski,* the inventor had designed and patented a device called an "anthropometer" used for instructional purposes to illustrate a certain system of abstract

---

[16]No California case has invoked the doctrine. We are aware that the distinction between investive and divestive publication raises a potential difficulty with federal preemption that apparently has not been directly addressed by any court in the United States. The present federal law allows states to govern common law copyrights as long as the protected material remains "unpublished" (17 U.S.C.A. § 2; *Sears, Roebuck & Co.* v. *Stiffel Company,* 376 U.S. 225 [11 L.Ed.2d 661, 84 S.Ct. 784]). Upon "publication," federal statutory copyright law preempts state common law (*Sears Roebuck Co., supra*). A state court employing the more stringent "divestive publication" test may find that in a particular factual setting, a publication has not occurred so that the common law copyright persists, while a federal court utilizing the "investive publication" standard might rule that a publication has occurred so as to invoke statutory copyright protection. The state courts' attempt to continue common law copyright protection into an area preempted by federal law would conflict with federal policy requiring the loss of common law copyright upon publication unless there has been compliance with the statutory conditions of registration and filing (17 U.S.C.A. § 5 et seq.).

We note, but need not address, this problem in the instant case, as it is not at issue and will shortly be moot upon the effective date of the Copyright Act of 1976, which entirely preempts state common law copyrights.

reasoning.[17] His patent application had contained drawings and descriptions of the device; subsequently, Korzybski also copyrighted it as a drawing or plastic work of a scientific or technical nature pursuant to the federal copyright statute. He then filed an action against the defendant to enjoin infringement of his copyright on the ground that defendant had photographed the anthropometer. The Court of Appeals affirmed the trial court decree dismissing the complaint for failure to state a cause of action on two grounds: first, the court stated that: "The filing of the application for the patent, including, of course, the diagrams, was a publication that entitled anyone to copy the drawings." (36 F.2d at p. 729; *Callaghan* v. *Myers,* 128 U.S. 617 [32 L.Ed. 547, 9 S.Ct. 177].)[18] Like the court below, the court in *Korzybski* reasoned that since the drawings of the patent were published, and anyone was free to copy them, therefore, the defendant also had a right to photograph the device itself since it was merely "an embodiment of the drawings of the patent" (p. 729). Second, the court held that an inventor cannot obtain both a patent and a copyright for his device because by means of a copyright, the inventor could not extend his monopoly on the device beyond the duration of the patent.

This court rejected the rationale of the publication dicta of *Korzybski* in *Smith* v. *Paul, supra,* 174 Cal.App.2d 744, and instead followed *American Tobacco Co.* v. *Werckmeister, supra,* 207 U.S. 284, *Korzybski*[19] is almost 50 years old and has been questioned by scholars (1 Nimmer on Copyright, § 38, pp. 163-164). The statement pertaining to publication is dicta and makes no sense in the light of the present patent office regulations that require pending patent applications to be kept secret (37 C.F.R. § 1.14), and the holding of *Korzybski* is no longer the law since, as we indicated above, for design patents, like the instant one, the federal courts now recognize an overlap between the protections of the patent

---

[17]The precise nature of Korzybski's device was not clear to the court.

[18]*Callaghan,* however, did not determine whether the filing of the book with the state constituted a publication which would extinguish a common law copyright. *Callaghan* dealt with a narrow and specific meaning of publication under the federal copyright statute as it existed at the time. Thus, the *Korzybski* opinion extended, and indeed misapplied, the *Callaghan* ruling to a wholly different situation, without offering any reasoning or authority.

[19]Zachary attempts to distinguish *Korzybski* on the ground that it dealt with a statutory, not a common law, copyright. To us, this distinction does not survive analysis as it is apparent that the court decided that Korzybski could obtain no statutory copyright because filing his patent application was a publication which extinguished his *common law* copyright, as he had failed to comply with the statutory requirements of notice and filing upon publication that are prerequisites to a valid statutory copyright.

and copyright statutes (*Application of Yardley, supra,* 493 F.2d 1389, 1395).

At best, as a decision from another jurisdiction, *Korzybski* is not controlling, but merely persuasive (*Rohr Aircraft Corp.* v. *County of San Diego,* 51 Cal.2d 759 [336 P.2d 521]). However, in view of its questionable vitality even in the federal courts, and its absence of reasoning, we do not find it persuasive on the issue before us.

Although there is no directly pertinent authority for the issue presented by the instant case, in addition to 17 United States Code Annotated section 8 (quoted above at p. 917) a large number of analogous cases hold as a general proposition that filing a document with a governmental agency for a governmental purpose does not constitute the type of publication that will divest an inventor or owner of his common law copyright, even though as a result of the governmental agency filing, the document becomes available for public inspection (*Smith* v. *Paul, supra,* 174 Cal.App.2d 744; *Jones* v. *Spindel,* 128 Ga. 88 [196 S.E.2d 22]; *Edgar H. Wood Associates, Inc.* v. *Skene,* 347 Mass. 351 [197 N.E.2d 886]; *Shaw* v. *Williamsville Manor, Inc.,* 38 App.Div.2d 442 [330 N.Y.S.2d 623]; *Krahmer* v. *Luing,* 127 N.J.Super. 270 [317 A.2d 96]; *United States* v. *Certain Parcels of Land,* 15 F.R.D. 224; *Ashworth* v. *Glover,* 20 Utah2d 85 [433 P.2d 315]; *Marvin Worth Prod.* v. *Superior Films Corp.,* 319 F.Supp. 1269 [168 U.S.Pat.Q. 693]; *Douglas International Corp.* v. *Baker,* 335 F.Supp. 282 [173 U.S.Pat.Q. 144]). *Smith* v. *Paul, supra,* has now become the majority rule (see cases collected in 77 A.L.R.2d 1048).

*Smith* v. *Paul, supra,* like most of the cases from other jurisdictions, dealt with a designer of homes who was required by law to file a copy of his building design with the county building commission before obtaining a building permit. Upon filing, the application was required by law to be maintained by the local authority for inspection and copying by any member of the general public who desired to do so. After the house was built, the defendant began building a home that the trial court found was copied from the plans filed with the local authority. The designer, like Zachary, filed an action for damages for infringement of his common law copyright in the plans of the house. As in the instant case, the defense argued that the filing of the plans with the county to obtain a building permit constituted a general publication that extinguished the common law copyright, and thereby allowed the defendant to copy the design with impunity.

In rejecting that defense and holding that only a limited publication resulted from the filing of the plans, the court said at page 750: "The purpose of the requirement of filing the plans in a government office is to protect the public from unsafe construction—not to take away from the architect his common-law property rights."

"In view of the limited purpose of the filing of architect's plans in a building department the plans do not become a public record in the sense that the public has the right to use such plans." (P. 751.)

"The filed plans are open to public inspection for the purpose of determining whether or not the building planned will comply with the law, but not for the purpose of giving anyone the right to use them." (P. 752.)

This reasoning is even more compelling under the circumstances of the instant case. The plans in Smith and Zachary's patent application are analogous. Both contain subject matter comprising letters and art pursuant to Civil Code section 980, subdivision (a) and contain subject matter comprising invention or designs, pursuant to Civil Code section 980, subdivision (b). Both are filed according to law with a governmental agency in order to obtain a right or privilege that the agency was created to grant, the payment of fees is required before the right or privilege is granted, and the fees cover the cost to the governmental agency of review and issuance. Both are open to inspection and copying by the public for some governmental purpose: in *Smith* v. *Paul, supra,* the protection of the public from unsafe construction; in the instant case "to promote the Progress of Science and useful Arts . . ." (U.S. Const., art. I, § 8, cl. 8).

Western contends that a general publication must have resulted because Zachary's purpose in obtaining his patent was not "to promote progress" but rather to commercially exploit his kite. While Western correctly cites *Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327, for the rule that intent is to be determined objectively rather than subjectively, i.e., by what the owner does and not by what he claims he intended, Western had misapplied the rule. Certainly, one of Zachary's purposes was to obtain a patent monopoly for his kite, but that was his subjective intent. What is relevant to the issue of publication is *whether*

*his conduct could justify the belief that his intent was to render the material common property.*

Unlike architectural drawings which immediately become accessible to the public upon filing, the patent application must be maintained in secrecy while pending and permanently if it is not granted. Most important, it would be absurd to hold, as Western insists we must, that an inventor who is seeking the protection of a patent for his invention thereby gives up his common law copyright to the drawings and design contained in the application upon issuance of the patent.[20] We think it would be totally unreasonable to find that the dissemination of the information contained in the patent application would justify the belief that it took place with the intention of rendering such work common property (*American Tobacco* v. *Werckmeister, supra,* 207 U.S. 284). Rather, the totality of factors compels us to hold that the contents of the patent application were communicated "under conditions . . . impliedly precluding [their] dedication to the public" (*Werckmeister* v. *American Lithographic Co., supra* [134 F. at p. 324]).

Zachary clearly did not intend to divest himself of his kite design by obtaining the patent (cf. *Hirshon* v. *United Artists Corp.,* discussed above at page 922). Therefore, we conclude that the issuance of Zachary's patent was a limited rather than a general publication. Accordingly, Zachary retained his common law copyright pursuant to Civil Code section 980 et seq. Western was entitled to copy the drawings and descriptions of Zachary's kite but not to use and misappropriate them for its own benefit. In view of this conclusion, it is not necessary for us to

---

[20]Western attempts to distinguish *Smith* v. *Paul, supra,* 174 Cal.App.2d 744, on a number of grounds that do not merit discussion. Its only serious contention is that the filing by Smith was necessary in order to build, while Zachary could have manufactured his kite without a patent. Hence, Western argues, *Smith* is inapposite because Zachary's filing was a "voluntary" act while the architect's was "involuntary." While it is true that the "forced" nature of the filing was one factor in *Smith* v. *Paul,* the presence or absence of that factor is not dispositive of the issue here. In analogous cases, the prevailing rule is that deposit of a copy of an unpublished work with the Copyright Office in order to obtain a statutory copyright is not a publication even though done voluntarily to obtain statutory rights. (See 1 Nimmer on Copyright, § 55, pp. 213-214.1; *Heim* v. *Universal Pictures Co.,* 154 F.2d 480 [68 U.S.Pat.Q. 303]; *Fader* v. *Twentieth Century-Fox Film Corporation,* 169 F.Supp. 880 [120 U.S.Pat.Q. 268]; *Austin* v. *Steiner,* 207 F.Supp. 776 [134 U.S.Pat.Q. 561]).

We also note that it is the recognized rule that producing documents under subpoena does not constitute a publication, even though the documents become part of the court record and thus are available for public inspection (*United States* v. *Certain Parcels of Land,* 15 F.R.D. 224).

reach the constitutional questions of due process and equal protection raised by Zachary and other issues raised by Western.

The order appealed from is reversed and the case remanded for further proceedings in accordance with this opinion.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied January 13, 1978, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied February 9, 1978.