[Civ. No. 7547.   Fourth Dist., Div. One.   Jan. 20, 1966.]

CHARLES B. READ, JR., et al., Plaintiffs and Appellants, v. D. K. TURNER et al., Defendants and Appellants; DOROTHY FULLMER, Defendant and Respondent.

Irwin O. Spiegel and Noel G. Conway for Plaintiffs and Appellants.

Fulwider, Patton, Rieber, Lee & Utecht and Francis A. Utecht for Defendants and Appellants.

Dorothy Fullmer, in pro. per., for Defendant and Respondent.

COUGHLIN, J.—This is an action for damages resulting from an alleged infringement of a copyright.

Plaintiffs, Mr. and Mrs. Read, are husband and wife; conceived a floor plan for a split-level, four-bedroom residence, which they contemplated building at 1705 Catalina Street in Seal Beach; and caused their plan to be expressed in a drawing. Mr. Read was a consulting engineer, building contractor and licensed real estate salesman. Mrs. Read also had a real estate salesman's license.

Defendant Turner was an excavation and concrete work contractor; also was president of the defendant T & T Investment Corp.; in April 1961, in preparing a bid on the excavation and concrete work for plaintiffs' proposed residence, sought and obtained from them a copy of their plans and specifications therefor which included a copy of the floor plan; was told by plaintiffs that the plans and specifications were to be returned to them and were to be under their control, but was not told that the floor plan was not to be copied; and in due course was awarded the subcontract for the work in question. Contemporaneously, Turner and T & T Investment Corp. decided to build a number of residences in the tract where plaintiffs' residence was being constructed; asked defendant Fullmer, a designer, to draw floor plans for these residences; furnished Fullmer with the copy of plaintiffs' floor plan drawing which Turner had in his possession; and suggested the use of this plan as a guide. Fullmer prepared drawings accordingly which incorporated, in substance, the floor plan expressed in the copy of plaintiffs' drawing.

By June 7, 1961, Fullmer had completed drawings for six residences. Shortly after the concrete work on plaintiffs' residence was completed one of Turner's employees told Mr. Read: "Turner is using your plans and is planning on building homes in the area from a copy of your plans." When the first two of defendants' residences were in the course of framing, one being located on the lot next to plaintiffs' and

the other being located two lots distant, they were viewed by Mr. Read who noticed a similarity between their and his floor plan. This was in August or September 1961. He made no complaint to defendants respecting the use of his plan until February 1962, when he obtained a copy of the floor plan used in defendants' residences; concluded it was substantially similar to his floor plan; consulted an attorney; and, through the latter, notified defendants their use of the floor plan was a violation of his copyright. He testified the reason he did not complain sooner was because before doing so he wanted to make sure of the similarity in plans.

In the meantime, i.e., November 1961, plaintiffs had sold their residence on Catalina Street. The purchaser asked for a copy of the floor plan; was given the same, which he kept; and was not told it might not be copied or used by anyone else. Read testified that the purchaser wanted a drawing of the floor plan to obtain rug measurements therefrom. Preliminary to the sale, viz., in August 1961, plaintiffs listed their residence with two realty boards under a multiple listing arrangement which permitted access thereto by 750 brokers or salesmen who were members of these boards. The real estate listing did not provide for a limited or restricted showing of the house, which could have been done. Also prior to the sale there had been a dozen or more open house showings when any member of the public desiring to view the premises had the opportunity of doing so. During some of these showings the plaintiffs were present and during others they were not present.

In all, Fullmer made 10 drawings which were used in the construction of 10 houses by defendants. The floor plan in each of these drawings, although not identical, was substantially similar to plaintiffs' floor plan. Defendants' first residence was completed about a month before the sale of plaintiffs' residence. The remaining nine residences were completed thereafter. Construction of some thereof commenced before receipt of plaintiffs' February 1962 notice of copyright infringement; of others following such notice; and of all prior to filing the complaint herein on May 14, 1962.

At this juncture it is pertinent to note the limited scope of the copyright infringement issue imposed by the allegations in the complaint and by the pretrial order. The complaint alleges that "Commencing in or about the month of *September 1961* and thereafter to and including the date hereof . . . defendants . . . and each of them, used, copied and appro-

priated substantial parts and portions of plaintiffs' property in drawings and specifications, . . . and said defendants, and each of them, did furthermore use, copy and appropriate plaintiffs' property in the construction of nine or more split level dwelling houses . . . ."[1] (Italics ours.) The pretrial order, based on a joint pretrial statement adopted as part of that order, provided: "The issues of fact and law to be determined at trial are as follows:

". . . . . . . . . . .

"3. Whether or not defendants . . . used, copied or appropriated plaintiffs' said interior floor plan and design and said drawings and specifications based thereon in whole or in part *in the construction of residences* . . ., and if so, whether *such* use, copying or appropriation amounts to an infringment [*sic*] of plaintiffs' common law property rights." (Italics ours.) Thus the issue of liability is limited by the complaint as to time of infringement to that "Commencing in or about the month of September, 1961" and, by the pretrial order as to the manner of infringement, regardless of when it may have occurred, to that arising out of the use, copying and appropriation of plaintiffs' floor plan in the construction of defendants' residences. The issue as thus defined appears to eliminate any claimed liability on account of the use of plaintiffs' drawings by defendant Fullmer at the request of defendants Turner and T & T Investment Corp., in designing floor plans for the latter's residences, except insofar as Fullmer's drawings were executed after September 1, 1961. In any event, the scope of the copyright infringement liability issue is ambiguously defined by the allegations in the complaint and the pretrial order. The significance of this ambiguity is reflected in a claimed dual infringement in (1) using and copying plaintiffs' floor plan in the designs drawn by Fullmer, and (2) in using and copying plaintiffs' floor plans in the construction of Turner and T & T Investment Corp. residences.

The issues of fact were tried by a jury which rendered a verdict in favor of plaintiffs and against all defendants assessing compensatory damages in the sum of $15,000, punitive damages against defendant Turner in the sum of $10,000, and punitive damages against the defendant T & T Invest-

---

[1] In two counts of the complaint plaintiffs alleged the infringement of their copyright by defendants; in one such count alleged resultant damages; and in the other count alleged the reasonable value of the use of their property, viz., their floor plan, to the unjust enrichment of defendants on account of such use.

ment Corp. in the sum of $7,500. All defendants moved for a new trial. The motion of defendants Turner and T & T Investment Corp. was denied upon condition plaintiffs would stipulate to a reduction in the amount of the compensatory damages to $5,000 and the punitive damages to $5,000, otherwise it was granted. Plaintiffs stipulated to the reduction and, pursuant to the order, the motion for a new trial was denied. The motion by defendant Fullmer was granted upon the ground the evidence was insufficient to support the verdict. Defendants Turner and T & T Investment Corp. appealed from the judgment; and plaintiffs appealed from the order granting Fullmer's motion for a new trial.

Defendants Turner and T & T Investment Corp. contend: (1) The evidence establishes as a matter of law that there was a general publication of plaintiffs' floor plan resulting in a termination of their common law copyright; (2) the evidence is insufficient to sustain the award of $5,000 compensatory damages; and (3) the evidence is insufficient to support any award for punitive damages.

Plaintiffs contend, in connection with their appeal, the evidence supporting the verdict against defendants Turner and T & T Investment Corp. also supports the judgment against Fullmer.

Pertinent provisions of the Civil Code, applicable to the case at bench, provide that the creator of a design "has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the . . . design and the representations or expressions thereof made by him remain in his possession" (Civ. Code, § 980, subd. (b)); and that if the creator of a design "intentionally makes it public, a copy or reproduction may be made public by any person, without responsibility to the owner, so far as the law of this State is concerned." (Civ. Code, § 983, subd. (b).)

█ These provisions adopt, in general, the common law copyright rule;[2] confer a copyright upon the designer of a house plan, protecting his property in the plan designed; and terminate the copyright upon publication when control by the owner over the subject thereof ceases. (*Shanahan* v. *Macco Constr. Co.*, 224 Cal.App.2d 327, 333-334 [36 Cal.Rptr. 584]; *Smith* v. *Paul*, 174 Cal.App.2d 744, 746-747, 757

---

[2]See *Weitzenkorn* v. *Lesser*, 40 Cal.2d 778, 788 [256 P.2d 947], which, although not pertinent to the instant case, indicates that Civil Code section 980, subdivision (b), might extend protection to an idea, as well as to the expression or representation thereof, which "transcends the normal bounds of common law copyright."

[345 P.2d 546, 77 A.L.R.2d 1036]; *Werckmeister* v. *American Lithographic Co.*, 134 F. 321, 323-326 [69 C.C.A. 553, 68 L.R.A. 591]; *Edgar H. Wood Associates, Inc.* v. *Skene*, 347 Mass. 351 [197 N.E.2d 886, 889]; *Kurfiss* v. *Cowherd*, 233 Mo.App. 397 [121 S.W.2d 282, 286]; *Wright* v. *Eisle*, 86 App. Div. 356 [83 N.Y.S. 887, 888-889].) ▮ For the purpose at hand the law makes a distinction between a general and a limited publication; decrees that only a general publication, and not a limited publication, results in loss of a copyright; defines a general publication as " 'such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public' "; and defines a limited publication as " 'one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public.' " (*Smith* v. *Paul, supra,* 174 Cal.App.2d 744, 749; *Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327, 333, 339.) ▮ Factors to be considered in determining whether a publication is general or limited are the intention of the owner, viz., whether his acts of publication are indicative of an intent that the subject of the copyright may be used by the general public; the character of the communication or exhibition effecting the publication; the nature of the subject of the copyright as related to the method of communication or exhibition in question; and the nature of the right protected. (*American Tobacco Co.* v. *Werckmeister,* 207 U.S. 284 [28 S.Ct. 72, 77, 52 L.Ed. 208]; *Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327, 334-335; *Smith* v. *Paul, supra,* 174 Cal.App.2d 744, 754; *Werckmeister* v. *American Lithographic Co., supra,* 134 F. 321, 324-326; *Kurfiss* v. *Cowherd, supra,* 233 Mo.App. 397 [121 S.W.2d 282, 286-288].) ▮ To ascertain the intention of the owner, an objective rather than a subjective test is applied. "[T]he court will look *to what he does* rather than to what he claims he intended" (*Shanahan* v. *Macco Constr., Co., supra,* 224 Cal.App.2d 327, 338; *Kurfiss* v. *Cowherd, supra,* 233 Mo.App. 397 [121 S.W.2d 282, 287]); "the implications of his outward actions to the reasonable outsider are controlling." (*Edgar H. Wood Associates, Inc.* v. *Skene (Mass.) supra,* 197 N.E.2d 886, 892.)

As applied to the instant case two alleged infringements of copyright occurred; one when the defendant Fullmer, at the

request of .defendants Turner and T & T Investment Corp., copied plaintiffs' floor plan from a drawing thereof furnished the latter defendants by plaintiffs; and the other when defendants Turner and T & T Investment Corp. followed plaintiffs' floor plan in the construction of their ten residences.

The uncontradicted evidence in the case at bench dictates the conclusion that plaintiffs, through their multiple listing and open house exhibitions, invited the general public to .view the floor plan of the house they subsequently sold; that the floor plan as a subject of copyright was of such a nature that its characteristics were particularly susceptible to recordation by casual observation; and that in making such public showings they must be deemed to have intended to relinquish control of the right to copy their design. Furthermore, when they sold the residence and furnished the purchaser with a copy of the plans and specifications without restriction upon the use of the floor plan incorporated in the house, they actually relinquished control over the use of that floor plan. These facts in toto establish as a matter of law a general publication of the floor plan that terminated plaintiffs' copyright. (*Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327, 334-335; *Kurfiss* v. *Cowherd, supra,* 233 Mo. App. 397 [121 S.W.2d 282, 287-288]; *DeSilva Constr. Corp.* v. *Herrald,* 213 F.Supp. 184, 196-197; *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529, 543 [42 P. 142, 50 Am.St.Rep. 57, 30 L.R.A. 182]; see also *Smith* v. *Paul, supra,* 174 Cal. App.2d 744, 750, 758; *Edgar H. Wood Associates, Inc.* v. *Skene, supra,* 197 N.E.2d 886, 895; *Wright* v. *Eisle, supra,* 86 App.Div. 356 [83 N.Y.S. 887, 889].)

The case of *Smith* v. *Paul, supra,* 174 Cal.App.2d 744, upon which plaintiffs rely, is factually distinguishable from the case at bench in that the subject of the copyright in the cited case was not merely a floor plan but the total architectural design contained in plans and specifications used in building a house which could not be recorded by a view of the completed structure; the creator of the design expressly retained ownership thereof at the time he sold the house; and there was no public showing thereof by him prior to sale. Of particular note is the statement of the court in the cited case (p. 750) that where a building constructed pursuant to plans protected by copyright is opened to the gaze of the public "Such fact may be a publication of the general design or idea of the building but not a publication of the exact plans whereby another may without effort other than

that of tracing the work of the architect completely duplicate the latter's effort.''

Plaintiffs contend that construction of a house incorporating a design subject to copyright does not constitute a publication of that design, citing *Smith* v. *Paul, supra,* 174 Cal. App.2d 744, 755, and *DeSilva Constr. Corp.* v. *Herrald, supra,* 213 F.Supp. 184, in support of this contention. ▮ It is our conclusion a design may be expressed by incorporating it in a structure as well as by incorporating it in a drawing. The publication of the design may be effected by an expression in like manner, depending upon whether the method of communication discloses the design to the claimed recipient. The circulation of a drawing expressing a design communicates the design to a person who receives the drawing. The exhibition of a structure expressing the same design, because it is incorporated therein, communicates the design to those to whom the exhibition is made if it is observable by them through the exhibition. The instant case is distinguishable from the cited case in that here the design, i.e., the floor plan, when incorporated in the house exhibited by plaintiffs, readily was observable by those to whom the exhibition was made. Such an exhibition constituted a publication of the plan. (*Shanahan* v. *Macco Constr. Co., supra,* 224 Cal.App.2d 327.)

▮ However, the general publication by plaintiffs of their floor plan does not foreclose their right to recover for the previous infringement of their copyright which occurred when defendant Fullmer, at the request of defendants Turner and T & T Investment Corp. copied plaintiffs' plan from their drawing in executing designs to be used in the construction of 10 residences. Plaintiffs had delivered this drawing, which showed the floor plan, to defendant Turner for a limited purpose, viz., in order that he might bid on the excavation and concrete work for their residence. The publication of the floor plan thus effected was limited and, under the rules heretofore noted, did not terminate their copyright.

Although the allegation in the complaint and the joint pretrial statement of issues did not clearly indicate whether plaintiffs relied upon the infringement of their copyright by the use thereof in the Fullmer drawings as well as the use thereof in constructing the ten residences, they now assert such reliance. We need not determine whether the issue of liability actually tried included the infringement occurring through the Fullmer drawings as the judgment should be

reversed in any event, because the award of damages obviously resulted from a consideration of both the alleged copyright infringement occurring after the general publication of plaintiffs' floor plan as well as the copyright infringement occurring before that general publication.

Furthermore, the evidence does not support the amount of compensatory damages awarded plaintiffs. The rule of damages applicable to a copyright infringement cause of action is that prescribed by Civil Code section 3333, i.e., the amount which will compensate for all detriment proximately caused by the copyright infringement. Factors to be considered in determining this detriment include the loss in value of the subject matter of the copyright because of the infringement; the value of the work of the owner thereof in creating such; the value of its use by another; and the loss of profit sustained by the owner on account of the infringement. (*Yadkoe* v. *Fields,* 66 Cal.App.2d 150, 160 [151 P. 906]; *Universal Pictures Co.* v. *Harold Lloyd Corp.,* 162 F.2d 354, 369; *Nash* v. *Alaska Air Lines,* 94 F.Supp. 428, 431.)

The circumstances in the instant case, where there has been a copyright infringement followed by a termination of the copyright, at which time the subject thereof became public property, direct attention to the provision of the rule that limits recovery to the detriment proximately caused by the copyright infringement. The issue thus presented is one of fact.

In support of the judgment plaintiffs rely on the testimony of Mr. Read that his floor plan was worth between $50,000 and $75,000. This opinion was based upon what he believed he could obtain from repeated use of the plan in building houses for sale and, in substance, was an estimate of prospective profits from such use. There was no evidence that plaintiffs were engaged in an established business for this purpose. Prospective profits from an unestablished business may not be used as a measure of damages. (*Grupe* v. *Glick,* 26 Cal.2d 680, 692-693 [160 P.2d 832].) Furthermore, this opinion entirely disregards the fact that plaintiffs were entitled to continue to use their floor plan wheresoever they desired. They claim damages because defendants Turner and T & T Investment Corp. built their ten residences in the same subdivision as plaintiffs built their residence which they assert, as a practical matter, foreclosed them from building and selling further houses using a similar floor plan in that subdivision. However, there was no evidence substantiating the premise essential to this claim, that there were any other

lots in the subdivision which could have been used for this purpose. Nor was there any showing that plaintiffs had the financial ability to construct any such houses or to purchase lots upon which they would be located. The claim was based on speculation. Mr. Read also testified that the value of the use of plaintiffs' floor plan by defendants Turner and T & T Investment Corp. was $50,000 to $75,000. The basis for this opinion was the claim that these defendants would receive this amount in profit upon the sale of their ten houses. However, there was no evidence to show how much, if any, profit defendants received from the sale of their houses; nor how much, if any, profit receivable from them would be attributable to the use of plaintiffs' floor plan and how much to other factors ordinarily contributing to the profit derivable from the construction and sale of houses. "It is a general rule that an opinion is worth no more than the reasons upon which it is based." (*Long Beach City H.S. Dist.* v. *Stewart,* 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249].) Under the circumstances noted Read's opinions are not sufficient to sustain the award of damages. (See *Southern Pac. Co.* v. *City of Los Angeles,* 5 Cal.2d 545, 548 [55 P.2d 847]; *People* ex rel. *Dept. of Public Works* v. *Alexander,* 212 Cal.App.2d 84, 91 [27 Cal.Rptr. 720].) Mr. Read also testified that under the custom of the trade an architect receives 8 percent of the gross construction costs as a fee for the use of his drawings. However, this testimony was limited to the use of such drawings in the construction of one house and did not indicate what would be allowed for the use of the same drawings in the construction of additional houses. Furthermore, it is obvious that the drawings referred to in the subject testimony consisted of more than the drawings of a floor plan. There was no showing respecting the cost of creating plaintiffs' floor plan design. Under these circumstances, the award of $5,000 compensatory damages is without support in the evidence.

Plaintiffs' claim to punitive damages was based on the contention, as noted in the joint pretrial statement, that defendants "acted willfully and maliciously or with indifference and disregard to any damage that plaintiffs might suffer" from defendants' infringement of plaintiffs' copyright. ▮ To sustain a claim to punitive damages upon these grounds it is necessary that the evidence establish "an intent to vex, annoy or injure" (*Gombos* v. *Ashe,* 158 Cal.App.2d 517, 527 [322 P.2d 933]); there must be "ill will on the part of the defendant, or his desire to do harm for the mere satisfaction of doing

it'' (14 Cal.Jur.2d 810); '' '. . . it is the wrongful personal intention to injure that calls forth the penalty.' '' (*Wolfsen* v. *Hathaway,* 32 Cal.2d 632, 647-648 [198 P.2d 1]; *Gruner* v. *Barber,* 207 Cal.App.2d 54, 59 [24 Cal.Rptr. 292].) ▇ The evidence in the instant case does not support imposition of punitive damages under this rule.

The judgment against defendants Turner and T & T Investment Corp. must be reversed because (1) the evidence does not support the award of $5,000 compensatory damages; (2) any award of damages should be limited to detriment caused by the copyright infringement occurring before plaintiffs' general publication of their floor plan through the public showings of their Catalina Street house and the sale of that house without restriction as to the use of its floor plan; and (3) the evidence does not support an award of punitive damages.

The reasons for reversing the judgment support the order of the trial court granting defendant Fullmer a new trial.

The judgment is reversed, and the order granting defendant Fullmer a new trial is affirmed. All defendants to recover costs on appeal.

Brown (Gerald), P. J., and Whelan, J., concurred.

A petition for a rehearing was denied February 8, 1966, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied March 16, 1966.