## No. C-1088

## Harry J. Masterson, and Lorraine M. Masterson v. A. I. McCroskie

(573 P.2d 547)

Decided January 16, 1978.

Raphael M. Solot, for petitioners.

Rothgerber, Appel & Powers, A. Frank Vick, Jr., James M. Lyons, Judith C. McNerny, for respondent.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This case involves an alleged infringement of a common law copyright in architectural plans for a house. The sole issue here is whether

there was a general publication, which would take from the plans the protection afforded by a common law copyright. As plaintiffs in the trial court, Mr. and Mrs. Masterson sought damages from defendant McCroskie for using their plans to build his house.

The trial court held that delivery of the plans to the general contractor and to the subcontractors without any express restriction amounted to a general publication. The trial court ruled that this was fatal to the plaintiffs' cause of action for damages and entered judgment for the defendant. The court of appeals affirmed this judgment in *Masterson v. McCroskie*, 38 Colo. App. 239, 556 P.2d 1231 (1976).

We granted certiorari to review this question of first impression in Colorado. The court of appeals held that, standing alone, delivering plans to contractors and subcontractors for bidding purposes and to assist in construction is a limited purpose publication, and not a general publication, but that constructing the house in accordance with the plans, in plain view of the general public, "constituted a general publication at least as to the exterior plans." In effect, the court of appeals adopted the view that delivery of the plans without any claim of copyright thereon, or any other express restriction to the contractor, subcontractors, and others, together with the construction of the house in plain view of the public, amounted to general publication. We reject this proposition and hold that as a matter of law, the Mastersons did not lose their common law copyright under the facts of this case. We therefore reverse the judgment of the court of appeals.

The plaintiffs, Mr. and Mrs. Masterson, assisted by an architect who assigned his rights to them, drew up original and creative plans for the construction of their personal home. They filed copies of the plans with the subdivision developer for design approval and with the city building department in connection with their building permit application. In addition, they furnished copies to the contractor and the subcontractors for their use and guidance during construction. All copies bore the address of the property on which the home was being constructed; however, the copies did not contain any express indication that the Mastersons desired to restrict publication of the plans. The copies were not numbered or marked confidential, and most of them did not bear the name of the Mastersons or the architect. Upon completion of construction, the Mastersons attempted to retrieve all copies of the plans from the contractor and the subcontractors but with only limited success.

Defendant McCroskie obtained the Mastersons' plans from one of the subcontractors after construction of the residence was completed and copied them for his use in designing and constructing his own home a block and a half from the Mastersons' home. The exterior of the McCroskie house was substantially a replica of the Mastersons home. The interior floor plan and foundation design, although not identical, closely resembled

the Masterson residence. The Mastersons sought compensatory and exemplary damages in the trial court from McCroskie for alleged infringement of their common law copyright in the plans.

Common law copyright protects intellectual property, including architectural plans, until the property is generally published and dedicated to the public. *E.g., Nucor Corp. v. Tennessee Forging Steel Service, Inc.*, 476 F.2d 386 (8th Cir. 1973); *Krahmer v. Luing*, 127 N.J. Super. 270, 317 A.2d 96 (1974); *Edgar H. Wood Associates v. Skene*, 347 Mass. 351, 197 N.E.2d 886 (1964). *See generally* Katz, *Copyright Protection of Architectural Plans, Drawings, and Designs*, 19 *Law and Contemporary Problems* 224 (1954); Annot., 77 A.L.R.2d 1048 (1961). The issue here is whether the Mastersons' acts and omissions evidenced an intent to dedicate the plans for their house to the public or whether the publication was limited. There is nothing in the evidence to show that the Mastersons did anything to indicate an intention to permit these plans to be used by the public generally. The burden of proving that a general publication has been made is on the party accused of infringement and this burden was not met. *Krahmer v. Luing, supra; Shaw v. Williamsville Manor, Inc.*, 38 App. Div.2d 442, 330 N.Y.S.2d 623 (1972).

The following explanation of the distinction between limited and general publications appears in *Werckmeister v. American Lithographic Co.*, 134 F. 321 (2d Cir. 1904), and is frequently cited in common law copyright cases even though *Werckmeister* itself deals with statutory copyright:

"A limited publication of the subject of copyright is one which communicates a knowledge of its contents under conditions expressly or *impliedly* precluding its dedication to the public . . . . The test is whether there is or is not such a surrender as permits the absolute and unqualified enjoyment of the subject-matter by the public or the members thereof to whom it may be committed.
\* \* \* \*

". . . A general publication consists in such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public." (Emphasis added.)

Although in this case there were no express restrictions, either on the plans themselves or communicated to the recipients of copies, under the circumstances there was an implicit limitation on the use to be made of the plans. Again, *Werckmeister* can be helpful:

"Prior to [general] publication, a person entitled to copyright may restrict the use or enjoyment of such subject to definitely selected individuals or a limited, ascertained class, or he may expressly *or by implication* confine

the enjoyment of such subject to some occasion or definite purpose. A publication under such restrictions is a limited publication, and no rights inconsistent with or adverse to such restrictions are surrendered. . . . The nature of the subject-matter, the character of the communication, circulation, or exhibition, and the nature of the rights secured, are chiefly determinative of the question of publication. Thus, the oral lecture to a class of students is not published even by permission to the individuals of such class to make copies for their own use, *because this is in accord with the purposes of instruction and does not otherwise injuriously affect the right of the author. . . .*" (Emphasis added.)

There is an implied restriction against any use which is inconsistent with the obvious purpose for which an item of intellectual property has been disseminated. Here, all communication of the plans was limited to selected individuals — the contractor, subcontractors, the building inspector, and the subdivision developer — who had to have copies of the plans in order for the house to be constructed. No member of the general public was given a copy of the plans. We therefore hold that the circumstances of dissemination were so limited as to preclude a reasonable outsider from concluding that the general public was free to use the plans.

The various theories asserted in support of characterizing the Mastersons' actions as a general publication are without validity. Filing copies of plans to comply with the requirements for obtaining a building permit is a limited publication, and under the facts here, could not be deemed a general publication. *Krahmer v. Luing, supra*; *Shaw v. Williamsville Manor, Inc., supra*; *Edgar H. Wood Associates v. Skene, supra*; *Smith v. Paul,* 174 Cal. App.2d 744, 345 P.2d 546 (1959). Likewise, submitting plans to a developer in order to comply with subdivision covenants cannot be said to be a general publication, but is limited to the purpose of enabling the developer to maintain the standards of construction and design established for the subdivision.[1] Also, the delivery of plans to contractors and subcontractors for bidding or use in construction is a limited publication for the purpose of facilitating the construction. *Nucor Corp. v. Tennessee Forging Steel Service, Inc., supra*; *Read v. Turner,* 239 Cal. App.2d 504, 48 Cal. Rptr. 919 (1966). *Contra, Ballard H. T. Kirk and Associates v. Poston,* 33 Ohio App.2d 117, 293 N.E.2d 102 (1972).[2]

The court of appeals erroneously held that construction of a home in public view constitutes a general publication of the exterior plans.

---

[1]Masterson testified that before filing plans with the subdeveloper, he asked what use would be made of his plans and was told that they were filed for the developer's records, not for general inspection [f. 681].

[2]The trial court relied on this case, but we believe that the authority to the contrary is more persuasive.

This conclusion is contrary to the weight of authority which distinguishes between publication of the general *design*, which necessarily occurs upon construction, and the publication of technical *plans*, which does not occur upon construction. *Nucor Corp. v. Tennessee Forging Steel Service, Inc., supra*; *DeSilva Construction Corp. v. Herrald*, 213 F. Supp. 184 (M.D. Florida 1962); *Edgar H. Wood Associates v. Skene, supra*; *Smith v. Paul, supra*. Had McCroskie drawn up his own architectural plans after observing the house constructed by the Mastersons, the court of appeals' conclusion would have been correct. *Cf. Read v. Turner, supra* (no infringement of floor plan copyright because floor plan was easily observable and copyable by members of the general public who were invited to an open house, but actual copying of the plans was infringement); *Wright v. Eisle*, 86 App. Div. 336, 83 N.Y.S. 887 (1903) (no infringement where defendant hired an architect to duplicate building and there was no proof of access to plans for copying). However, here McCroskie photocopied Mastersons' exact plans and merely deleted the address and inscribed his own address. Such a misappropriation of the fruits of the labor, time and expenditure of another is not permissible. "[T]he right fully to reproduce plans is a far more substantial aid to a builder unwilling to pay for architectural services than the right to make sketches or drawings of a completed structure." *Edgar H. Wood Associates v. Skene, supra* at 895.

We are disinclined to hold that a reasonable outsider would believe that the architectural plans for the Mastersons' house were in the public domain where the plans were communicated only to those whose use of them was essential to the construction of the house.

■ Generally, the measure of damages for conversion is the value of the converted property at the time and place of the misappropriation plus legal interest from the time of the conversion to the time of trial. *Gates Factory Store v. Coleman*, 142 Colo. 246, 350 P.2d 559 (1960). The trial court made the following finding of fact:

"8. The Court finds that the Masterson plans were worth $7,500 at the time of construction of the Masterson home and at the time of McCroskie's copying of the plans. This valuation is based upon the testimony concerning the amount of time spent on the plans by both Masterson and Alexander [the architect], the uniqueness of those plans, and Alexander's testimony concerning his fee schedule. . . ."

Although the architect testified that his opinion of the value of the plans was $15,000, he apparently included in that estimate the value of services he had rendered which did not directly contribute to the drawing of the plans, such as supervision of construction and research for various interior details. The trial court's valuation does not seem to be erroneous and is based upon appropriate considerations. *See Edgar H. Wood Associates v. Skene, supra*. The trial court obviously intended to have the damages

issue settled in the event its judgment for the defendant was reversed on appeal. In accordance with the general rule, legal interest on the value found by the trial court should be assessed from the time of the conversion and added to that value in considering the damages to be awarded to the Mastersons by the trial court.

The judgment of the court of appeals is reversed and the cause is returned to the court of appeals for remand to the trial court for entry of judgment in favor of the plaintiffs for damages, interest and costs in accordance with the trial court's finding.

MR. JUSTICE GROVES dissents.

MR. JUSTICE GROVES dissenting:

I respectfully dissent for the reasons expressed, and under the authorities cited, by the Colorado Court of Appeals in its opinion, *Masterson v. McCroskie*, 38 Colo. App. 239, 556 P.2d 1231.