COWART, Judge.
In December of 1977, appellee filed suit against appellant seeking damages for appellant’s infringement of appellee’s common law copyright by the unauthorized use of a set of appellee’s building plans. Although the trial court initially found for the appellant, this court reversed that judgment, directed that judgment be entered for appel-lee, and remanded the case to the trial court for determination of the compensatory damages due the appellee. Kisling v. Rothschild, 388 So.2d 1310 (Fla. 5th DCA 1980), review denied, 397 So.2d 779 (Fla.1981). On remand, the trial court awarded the appellee damages in the amount of ten percent of the cost of construction of each of three houses the appellant had built using the plans. We reverse.
There was various testimony at the original trial going towards the damages the appellee had suffered. Appellant testified that if he had acquired the plans from a planning service, the cost would have been *800 between $300 and $500. Alternatively, if he had had an architect prepare the plans from scratch, it would have cost between $1,000 and $1,500. As a third measure, appellant testified that copyrighted house plans were available through mail order for $250 apiece with no limit on the number of times the plans could be used. On the other hand, appellee elicited testimony from an architect, that the architect charged in the vicinity of anywhere from eight to twelve percent of the cost of the structure as his fee for designing a house from scratch. The architect additionally testified that on a $40,000 home, he would probably charge twelve percent because he would not want to do it and it was not the type of work he normally did. It was stipulated that appellant built three homes from the plans and the construction costs of the three houses were $43,500, $45,500 and $49,500. The trial court ultimately awarded damages in the amount of ten percent of the sum of the costs of construction of all three Rothschild houses.
In the previous appeal from this case, this court aligned itself with the majority of jurisdictions when it held appellee had a common law copyright in his architectural plans and designs and that the appellant’s unauthorized use of those plans constituted an infringement. Kisling v. Rothschild, 388 So.2d 1310 (Fla. 5th DCA 1980), review denied, 397 So.2d 779 (Fla.1981). However, the correct measure of damages in such a situation was not addressed.
When a defendant infringes upon the plaintiff’s common law copyright in an architectural plan, the correct measure of damages has been stated variously as “the fair market value of his set of ... plans,”[1] “the fair value of the ... plans,”[2] “the value of the converted property [plans] at the time and place of the misappropriation plus legal interest,”[3] “the fair reasonable market value of the property converted as of the date of conversion plus interest,”[4] and the “value of the item converted.”[5] While, in general, the various definitions all amount to a “fair market” value, there appears to be at least three different methods for arriving at this figure.
The first method is to determine what the plan’s worth is to the owner. Under this concept, several considerations would be material: (1) the value of the work of the owner in creating the plan, (2) the decrease in the value of the plan to the owner because of the infringement, and (3) any loss of profit the owner would have made from using the plan in the future on account of the infringement.[6] While, in the abstract, such a measure of damages would recompense the owner for the infringement, in practice, finding competent evidence to support these various factors would be difficult, if not impossible.
A second method for determining damages would be to determine the infringed plan’s worth to the infringer. Under this method, a plaintiff would recover the percentage of the infringer’s profit which was attributable to the plan.[7] Unfortunately, *801 this method of computation suffers the same problems as the previous method. While the infringer’s total profit is susceptible to evidentiary proof, the percentage of the profit attributable to the plan is highly subjective and not susceptible to any type of direct proof.
Finally, a third method for determining the fair market value for an architectural plan is to determine what a willing buyer would pay a willing seller for the plan. Under this method, there does not appear to be any clear industry preference between a flat fee or a percentage of the cost of the construction of the building encompassed in the plan. However, there was evidence in the instant case that the percentage of the cost of construction was one permissible method and this method has been used elsewhere.[8] However, while the trial court may not have erred in using the percentage method in determining damages, the trial court did err in not considering the plan’s attribute of uniqueness as a factor in mitigation of the damages. In awarding ten percent of the cost of construction of each home, the trial court stated this court’s previous opinion required him to award some special measure of damages for the plan’s unique character. However, the “uniqueness” of a plan in determining whether it qualifies for common law copyright protection is not necessarily the same as a plan’s “uniqueness” in determining the damages suffered by the infringement. This is best illustrated by contrasting two examples. First, assume the appel-lee had only used the plans to build one home and intended this home to be the only one ever built; then appellant appropriates the plans and builds ten identical homes in close proximity to appellee’s home. In the second example, appellee uses the identical plans to build one hundred similar homes in a housing development; then appellant appropriates the plans and builds an additional ten houses. In both situations the plans may still be sufficiently unique to justify common law copyright protection. However, appellee’s damages in the second situation are arguably much less since the plans themselves have lost much of their unique character with each additional home built.[9] This uniqueness aspect would affect the measure of damages under the percentage method (third method above) in two respects. First, the fact that the appellee built several homes using the plan before the infringement occurred would partially mitigate the award of damages for the initial breach of the appellant. Secondly, while each additional house built by the appellant constituted a separate breach with additional damages, each subsequent breach (actually each subsequent use by anyone) should require some reduction in the plan’s then market value due to the dwindling unique aspect of the plan. Because of the trial judge’s interpretation of our prior opinion which related to liability, this mitigation aspect was not considered by the trial court in the instant case. Therefore, the judgment is reversed for reconsideration in light of this opinion relating to damages.
DAUKSCH and FRANK D. UP-CHURCH, Jr., JJ., concur.

. Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886, 896 (1964).

. Nucor Corp. v. Tennessee Forging Steel Service, Inc., 513 F.2d 151, 153 (8th Cir. 1975).

. Masterson v. McCroskie, 194 Colo. 460, 573 P.2d 547, 551 (1978).

. Jones v. Spindel, 122 Ga.App. 390, 177 S.E.2d 187, 190 (1970), cert. dismissed, 227 Ga. 264, 180 S.E.2d 242 (1971), affirmed on appeal after remand, 128 Ga.App. 88, 196 S.E.2d 22 (1973).

. Ashworth v. Glover, 20 Utah 2d 85, 433 P.2d 315, 320 (1967).

. See, e.g., Read v. Turner, 239 Cal.App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237 (1966).

.See, e.g., Read v. Turner, 239 Cal.App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237 (1966). This measure of damages is often used in copyright infringement cases involving other types of literary properties. For example, in Smith v. Little, Brown and Co., 273 F.Supp. 870 (S.D.N. Y.1967), affirmed, 396 F.2d 150 (2d Cir. 1968), plaintiff sued defendant for infringement of her manuscript. In this situation, plaintiff was required to show the money the defendant had received from the sale of the book and the defendant was allowed to show the costs incurred in publishing the book. Even when the net profits were arrived at, defendant was allowed to attempt to show that the profit should be apportioned between the plagiarized portion of the published work and the nonplagiarized portion. Accord, Sammons v. Colonial Press, *801 Inc., 126 F.2d 341, 346 (1st Cir. 1942); Sheldon v. Metro Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939), affirmed, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940).

. See, e.g., Doup v. Almand, 212 Ark. 687, 207 S.W.2d 601 (1948); Read v. Turner, 239 Cal. App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237 (1966); Jones v. Spindel, 122 Ga.App. 390, 177 S.E.2d 187 (1970), cert. dismissed, 227 Ga. 264, 180 S.E.2d 242 (1971), affirmed on appeal after remand, 128 Ga.App. 88, 196 S.E.2d 22 (1973).

. See, e.g., Read v. Turner, 239 Cal.App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237 (1966); Masterson v. McCroskie, 194 Colo. 460, 573 P.2d 547 (1978); Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1964).