James F. CULPEPPER and Dagmar I. Culpepper, Petitioners,

v.

PEARL STREET BUILDING, INC., a Colorado corporation; Rayanne Mori; Loren Newton, d/b/a M & M Transport Company, and Loren Newton, Respondents.

No. 93SC458.

Supreme Court of Colorado, En Banc.

July 11, 1994.

Rehearing Denied Aug. 8, 1994.

Gorsuch Kirgis LLC, James A. Jablonski, Denver, for petitioners.

Cooper & Kelley, P.C., John R. Mann, Denver, for respondents Pearl Street Bldg., Inc. and Rayanne Mori.

Hall & Evans, Alan Epstein and James B. Powers, Denver, for respondents Loren Newton, d/b/a M & M Transport Co. and Loren Newton.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Culpepper v. Pearl Street Building, Inc.*, No. 92CA0729 (Colo. App. Apr. 29, 1993), an opinion not selected for publication. We are asked to decide whether the plaintiffs, whose deceased son's body was mistakenly cremated before an autopsy could be performed, suffered a compensable injury.

The trial court granted the summary judgment motion of the defendants, ruling that the plaintiffs could show no actual damages and that there was no evidence that the defendants had acted to intentionally cause emotional distress to the plaintiffs. The court of appeals affirmed, holding that damages for emotional distress were available only when a defendant's conduct was willful and wanton, and that there was no cause of action for negligent infliction of emotional distress resulting from mishandling of a dead body.

We affirm the results reached by the trial court and the court of appeals, and hold that the Culpeppers have no viable claims for conversion or outrageous conduct.

I.

The plaintiffs, James and Dagmar Culpepper (the Culpeppers), were the parents of James Culpepper, Jr. (Culpepper). On August 31, 1990, the Culpeppers' son, aged thirty-two, was found dead in his apartment. He had been dead approximately one week. The

body was transported to the Jefferson County Coroner's office to determine the cause of death. Upon arrival, the body was marked and placed in a cooler. Also present in the cooler was the badly decomposed body of a suicide victim identified as James Connolly, who had died from a gunshot wound to the head.

The coroner's office had arranged for Connolly to be cremated by Pearl Street Building, Inc. (Pearl Street), after obtaining permission from Connolly's family. Defendant Rayanne Mori (Mori) was the owner and operator of Pearl Street. Mori arranged with Loren Newton (Newton), operator of M & M Transport Company, to pick up the body of James Connolly and bring it to Pearl Street for cremation. Newton and an assistant arrived at the coroner's office, and, for reasons that are disputed, mistakenly took Culpepper's body instead of Connolly's, and transported it to Pearl Street.

On arrival, Culpepper's body was placed in the crematory, and Mori began the cremation procedure. Meanwhile, the pathologist at the coroner's office discovered that Culpepper's body had been taken to the crematorium and that Connolly's body was still in the cooler. He telephoned Mori, who immediately ceased the cremation. Although the flesh was gone from the body, the skull was intact, and the remains were delivered to the Jefferson County Coroner for a positive identification of the body. The remains were subsequently released to Culpepper's parents, who arranged for completion of the cremation.

The Culpeppers later brought this action against the crematorium, the transportation company, Jefferson County, and several employees of each organization as individual defendants, asserting claims of conversion and destruction of property, breach of contract, outrageous conduct, and civil rights violations.[1] They argued that the wrongful cremation of their son's remains prevented them from learning the cause of his death.[2] Jefferson County and its employees who were individual defendants were subsequently dismissed from the suit, and the claims for breach of contract and civil rights violations were dismissed. The trial court granted the defendants' summary judgment motion on the claims for conversion and outrageous conduct. On the issue of conversion, the trial court ruled that, because the Culpeppers had not pleaded any actual damages, they were not entitled to exemplary damages. Furthermore, the trial court held, exemplary damages were not recoverable when a defendant's actions were merely negligent, but were only available when the action was undertaken in a willful and wanton manner. The trial court further found that summary judgment was appropriate on the Culpeppers' outrageous conduct claim because the Culpeppers could not show that the defendants engaged in the conduct with the specific intent of causing severe emotional distress. The court also reasoned that the Culpeppers could only recover for intentional infliction of emotional distress if they were present at the scene of the outrageous conduct.

The court of appeals affirmed, holding that exemplary damages for emotional distress related to the mishandling of a dead body, without evidence of physical injury, were recoverable only on a showing of willful and wanton conduct. The court of appeals, citing its ruling in *Kimelman v. City of Colorado Springs*, 775 P.2d 51 (Colo.App.1988), further held that the Culpeppers could not recover on a theory of negligent infliction of emotional distress resulting from the mishandling of a dead body because of *Kimelman's* holding that such a claim did not exist in this state. The court of appeals echoed the reasoning of the trial court in disposing of the claim of outrageous conduct.

## II.

■ We first address the Culpeppers' claim of conversion. In their initial and nu-

---

1. They did not assert a claim for negligence apparently because they believed that the court of appeals' holding in *Kimelman v. City of Colorado Springs*, 775 P.2d 51 (Colo.App.1988), precluded such an action.

2. The Culpeppers stated in depositions that cremation was not against their religious or moral beliefs. Police investigators found no evidence of foul play in the death of James Culpepper, Jr., and the record indicates that Culpepper was an insulin-dependent diabetic who had been experiencing health problems related to his diabetes during the six months before his death.

merous amended complaints, the Culpeppers alleged that the defendants were liable for the intentional destruction and conversion of their property, namely, the body of their son. They argued that the right to bury and preserve the remains of their son was a quasi-property right, with which the wrongful cremation by the defendants interfered.

The question of whether a person has a property right in the body of a deceased family member has never been addressed by this court. Clearly, there can be no property right in a dead body in a commercial sense, since a dead body cannot be bartered or sold. Some courts have recognized a quasi-property right in dead bodies for the limited purpose of seeing that the body is decently interred or disposed of. *See* 22A Am.Jur.2d *Dead Bodies* § 3 (1988) and cited cases; *see also Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438, 441 (1985) ("The quasi-property rights of the survivors include the right to custody of the body; to receive it in the condition in which it was left, without mutilation; to have the body treated with decent respect, without outrage or indignity thereto; and to bury or otherwise dispose of the body without interference.").

Historically, the notion of a quasi-property right arose to facilitate recovery for the negligent mishandling of a dead body. If the plaintiff could show that his property right had been harmed, he would avoid the burden of proving that his emotional distress was accompanied by physical injury.[3] *See Strachan v. John F. Kennedy Memorial Hosp.*, 109 N.J. 523, 538 A.2d 346 (1988); Note, *Damages: Pleading: Property: Who May Recover for Wrongful Disturbance of a Dead Body*, 19 Cornell L.Q. 108, 110–11 (1933). In reality, however, the primary concern of the right is not the injury to the dead body itself,

but whether the improper actions caused emotional or physical pain or suffering to surviving family members. The injury. is seldom pecuniary; rather, damages are grounded in the mental and physical injuries of survivors. *Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 292 N.W.2d 816, 821 (1980).

Under the fiction of a "quasi-property" right in the survivors, the Second Restatement of the Law of Torts has proposed a cause of action for tortious interference with dead bodies:

§ 868. Interference with Dead Bodies

One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon a body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

Restatement (Second) of Torts § 868 (1979). Nevertheless, comment a to section 868 concedes that:

[t]he technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a "property" or a "quasi-property" right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility and can be used only for the one purpose of interment or cremation. *In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for the mental distress.*

Restatement (Second) of Torts § 868 cmt. a (1979) (emphasis added). Although courts recognize a cause of action for intentional mishandling of a dead body,[4] few have al-

---

3. In *Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978), citing § 436 of the Restatement (Second) of Torts (1965), we recognized a cause of action in negligence not only when a plaintiff is physically injured but also when the defendant created an unreasonable risk of bodily harm to the plaintiff, and the plaintiff suffered emotional distress which resulted in serious physical manifestations or mental illness. We have never recognized a cause of action for emotional distress grounded in negligence without proof that

the plaintiff sustained physical injury or was in the "zone of danger."

4. This court has allowed recovery when the mishandling of a dead body was willful and wanton. *See, e.g., Spomer v. City of Grand Junction*, 144 Colo. 207, 355 P.2d 960 (1960) (finding evidence of willful and wanton conduct in City's exhumation and reburial of son's body over parents' objections); *Fitzsimmons v. Olinger Mortuary Ass'n*, 91 Colo. 544, 17 P.2d 535 (1932) (allowing

lowed a plaintiff to proceed on a claim of negligence. Section 868 of the Restatement represents the minority viewpoint, and most states that have considered it in the context of an action in negligence have declined to follow it. *See, e.g., Gonzalez v. Metropolitan Dade County Pub. Health Trust,* 626 So.2d 1030 (Fla.Dist.Ct.App.1993) (denying recovery to parents of dead infant who were given wrong body for burial because they sustained no physical injury and the defendant did not act maliciously, and rejecting theory of quasi-property right espoused by section 868); *Courtney v. St. Joseph Hosp.,* 149 Ill.App.3d 397, 102 Ill.Dec. 810, 500 N.E.2d 703 (1986) (rejecting section 868 and negligence claim of widow, whose husband's body was improperly stored and thus rendered unfit for open-casket viewing, because precedent required physical injury or impact); *Burgess v. Perdue,* 239 Kan. 473, 721 P.2d 239 (1986) (ruling that a cause of action against the physician who mistakenly performed an autopsy of the body of the plaintiff's son could be pursued only if the physician's actions were intentional or malicious, but not if they were negligent); *Sackett v. St. Mary's Church Soc'y,* 18 Mass.App.Ct. 186, 464 N.E.2d 956 (1984) (allowing no claim on defendant's negligent mishandling of casket during burial because the plaintiffs suffered no physical injury and the mishandling was not intentional or reckless); *Hackett v. United Airlines,* 364 Pa.Super. 612, 528 A.2d 971 (1987) (denying daughter's claim of negligent infliction of emotional distress against airline that damaged her father's body and casket in transit); *Scarpaci v. Milwaukee County,* 96 Wis.2d 663, 292 N.W.2d 816 (1980) (rejecting theory of property right in dead body and denying recovery for negligent performance of an autopsy because the plaintiff suffered no physical injury). *Cf. Christensen v. Superior Court,* 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (holding mortuary responsible for negligent handling of human remains because mortuary owed duty to the close relatives for whom funeral services were performed); *Strachan v. John F. Kennedy Memorial Hosp.,* 109 N.J. 523, 538 A.2d 346 (1988)

recovery in a contract action by widow after mortuary that transported her husband's body by

(holding that hospital had duty to turn over a child's remains to parents but recognizing that section 868 involved the tort of the wrongful infliction of emotional distress, not a "somewhat dubious" property right); *Whitehair v. Highland Memory Gardens, Inc.,* 174 W.Va. 458, 327 S.E.2d 438 (1985) (acknowledging quasi-property right in a dead body and adopting section 868).

The Culpeppers urge us to adopt section 868 of the Restatement (Second) of Torts and recognize a cause of action in this state for negligent interference with à dead body. The court of appeals opinion, citing *Kimelman v. City of Colorado Springs,* 775 P.2d 51 (Colo.App.1988), ruled that such a claim was not available. However, the court of appeals appears to have reached the issue of whether to adopt such a cause *sua sponte,* since the Culpeppers did not raise it either to the trial court or in their briefs to the court of appeals.

Moreover, the Culpeppers on several occasions specifically stated that they were *not* bringing a negligence claim. In their brief opposing the defendants' motion for summary judgment, for example, they distinguish their case from *Kimelman,* explaining that because theirs was not an action for negligence it was not precluded by the court of appeals' holding in *Kimelman.* In another instance, the Culpeppers responded to the defendants' motion to require them to file a certificate of review in accordance with section 13–20–602, 6A C.R.S. (1987 & 1993 Supp.). That section directs the plaintiff's attorney in a negligence action against a licensed professional to file a certificate that he has consulted with an expert knowledgeable in the area of the alleged negligent conduct and that the expert has concluded the claim does not lack substantial justification. Failure to file such a certificate results in the dismissal of the complaint. In response to the defendants' motion, the Culpeppers stated that section 13–20–602 did not apply to their suit because "[t]his is not an action in negligence," but rather one in which

airplane used photographs in an advertisement).

the harm caused by the defendants was intentional.

The Culpeppers' failure to raise at trial or to the court of appeals the issue of whether a cause of action exists for negligent interference with a dead body under section 868 of the Restatement (Second) of Torts precludes us from addressing the question.[5]  *See A.O. Smith Harvestore Prods., Inc. v. Kallsen,* 817 P.2d 1038 (Colo.1991); *Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544 (Colo.1988).

We therefore address only the Culpeppers' characterization of their injury as one of conversion. We formally reject the fictional theory that a property right exists in a dead body that would support an action for conversion.[6]  Rather, an injury like that suffered by the Culpeppers is more properly addressed through a tort action related to the infliction of emotional distress or to mental anguish caused by willful, wanton, or insulting conduct, or through an action for breach of contract and accompanying mental suffering.

### III.

The second issue before us is whether the Culpeppers should have been allowed to proceed on their claim for outrageous conduct. They assert that the defendants intentionally or recklessly caused them severe emotional distress. The Culpeppers argue that the "intent" of the defendants is shown because the actual cremation of the body was intentional. They argue in the alternative that the conduct of the defendants was reckless because they should have known that a mistaken cremation would cause severe emotional distress to the family of the deceased. We disagree.

We recognized a cause of action for severe emotional distress without accompa-

nying physical injury in *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). We cited section 46 of the Restatement (Second) of Torts (1965):

### § 46.  Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The elements of liability for the tort of extreme and outrageous conduct are that:

1. [t]he defendant engaged in extreme and outrageous conduct;

2. [t]he defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress[;] and

3. [t]he plaintiff incurred severe emotional distress which was caused by the defendant's conduct.

CJI–Civ.3d 23:1.  Proof of accompanying physical injury is not required.  *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753.

"Outrageous conduct" is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Destefano v. Grabrian,* 763 P.2d 275, 286 (Colo.1988);  *see also Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result.  A person

---

**5.** We note that the Culpeppers had no contractual relationship with any of the defendants, and that to successfully bring a negligence claim they would first have to show that the defendants owed them a duty which was breached by the cremation of the body.  Because of our holding, we do not address whether such a duty existed.

**6.** Even if this were an action for conversion, we agree with the trial court that the Culpeppers could not recover because they failed to show

that they suffered any damages.  The property that was allegedly converted, a body, has no compensable value.  The measure of damages for conversion is the value of the converted property plus interest from the time of conversion to the time of trial.  *Masterson v. McCroskie,* 194 Colo. 460, 573 P.2d 547 (1978).  Exemplary damages are not recoverable without proof of actual damages.  *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person. *See* CJI–Civ.3d 23:3.

To withstand the defendants' motion for summary judgment, the Culpeppers had the burden to show that a triable issue of fact existed. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). A triable issue of fact would exist if there were evidence that the defendants engaged in outrageous conduct with the specific intent of causing severe emotional distress or that the defendants acted recklessly with the knowledge that there was a substantial probability that their conduct would cause severe emotional distress. Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question. Restatement (Second) of Torts § 46 cmt. h (1965); *Price v. Federal Express Corp.,* 660 F.Supp. 1388 (D.Colo. 1987); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978).

We hold that the trial court correctly granted the defendants' summary judgment motion. First, the Culpeppers produced no evidence that the defendants intended to cause them emotional distress or acted recklessly in cremating the wrong body. While the actions of one or more of the defendants may have been proved to have been negligent, such conduct would not support recovery on a claim of outrageous conduct. As the trial court stated, "[I]t is clear from the facts that Defendants did not know they had the wrong body, therefore, there was no reason for them to know that their behavior would likely cause severe emotional distress to the Plaintiffs." Indeed, it was undisputed that, as soon as Rayanne Mori realized she was cremating the wrong body, she stopped the cremation and retrieved the remains. Such conduct is inconsistent with an intent to inflict emotional distress on the Culpeppers. Nor do the facts support the Culpeppers' contention that the defendants acted recklessly with the knowledge that there was a substantial probability that their conduct would cause severe emotional distress. There has been no showing that any of the defendants chose a course of action with the knowledge of facts that would create a strong probability of injury to the Culpeppers.

Furthermore, we agree with the trial court that no reasonable person could have found that the conduct of the defendants was outrageous. We do not believe that the defendants acted beyond the bounds of decency or in an atrocious manner that is intolerable in a civilized community. They did not mistreat the body of James Culpepper, Jr., or handle it with disrespect. They did not act in an outrageous manner.

## IV.

We hold that, because there is no property right in a dead body and because they have not suffered any actual damages, the Culpeppers may not pursue an action for conversion. We do not reach the issue of whether the Culpeppers would have been able to recover on a theory of negligent mishandling of a body because the issue was not properly raised in the lower courts. We further conclude that the actions of the defendants were not representative of the seriously egregious conduct that would support a claim for outrageous conduct.

The judgment of the court of appeals is affirmed.

KIRSHBAUM, J., concurs in part and specially concurs in part, and SCOTT, J., joins in the concurrence and special concurrence.

Justice KIRSHBAUM concurring in part and specially concurring in part.

I concur in parts I, III, and IV of the majority opinion. However, I cannot join part II thereof.

The allegations of the complaint do not establish intentional or reckless conduct by any of the defendants. While such allegations might establish negligent conduct by some or all of the defendants, the Culpeppers purposely elected not to pursue negligence

claims in this action and did not request the trial court to recognize the principles set forth in Section 868 of the Restatement (Second) of Torts (1979). As the majority notes, the court of appeals apparently elected to address that question *sua sponte*. Maj. op. at 881. In view of these circumstances, I conclude that the court of appeals erred in addressing a theory of recovery neither advocated nor suggested by the Culpeppers. The issue should not be considered to any extent by this court. *See A.O. Smith Harvestore Prods., Inc. v. Kallsen*, 817 P.2d 1038 (Colo. 1991).

The majority rejects the Culpeppers' conversion claim on the basis of its conclusion that there is no property right in a dead body that would support such a claim. Maj. op. at 882. It is not clear whether the majority acknowledges that family members do have some property rights in dead bodies. Certainly some courts and commentators have recognized such rights. *See, e.g., Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 292 N.W.2d 816, 820 (1980); Michelle Bourianoff Bray, *Personalizing Personalty: Toward a Property Right in Human Bodies*, 69 Tex.L.Rev. 209 (1990); Erik S. Jaffe, *"She's Got Bette Davis['s] Eyes": Assessing the Nonconsensual Removal of Cadaver Organs Under the Takings and Due Process Clauses*, 90 Colum.L.Rev. 528 (1990). I am not prepared to conclude that the interests of surviving family members in the appropriate care of the body of a deceased person are not interests susceptible to judicial protection. Nor am I prepared to conclude that a dead body has no measurable value under any circumstances.

I do conclude, however, that the Culpeppers have not established a claim for conversion in this case. This court has defined "conversion" as "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Byron v. York Inv. Co.*, 133 Colo. 418, 424, 296 P.2d 742, 745 (1956). One commentator has noted that "[t]he gist of the tort is the exercise, or intent to exercise, dominion or control over the property of another in denial of, or inconsistent with, his or her rights therein." 7 Stuart M. Speiser, et al., *The American Law of Torts* § 24:1 at 700 (1983). Another has stated that "the tort

of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15 at 90 (5th ed. 1984). *See also* Restatement (Second) of Torts § 222A (1965) (conversion is an exercise of dominion "which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel").

The Culpeppers alleged that their possessory interest in the body was "for the purposes of burial." Their amended complaint does not allege that the defendants wrongfully interfered in a substantial way with that particular possessory interest. Not only do they fail to allege that the body was not capable of burial; they affirmatively allege that they elected to cremate the body. In view of this state of the pleadings, I agree with the majority's conclusion that the claim for conversion was properly dismissed.

Therefore, I specially concur in part II of the majority opinion.

SCOTT, J., joins in this concurrence and special concurrence.